804 P.2d 1097

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BERNALILLO, et al., and New Mexico Public Employees Council 18 and Local 2260 of the American Federation of State, County and Municipal Employees, AFL–CIO, Plaintiffs–Appellees,**

v.

**Patrick J. PADILLA, Bernalillo County Treasurer, Defendant–Appellant.**

**No. 10721.**

Court of Appeals of New Mexico.

Dec. 4, 1990.

Mark Shapiro, Asst. Dist. Atty., Albuquerque, for defendant-appellant.

Tito D. Chavez, J. Edward Hollington, Asst. Bernalillo County Attys., Albuquerque, for plaintiffs-appellees Bd. of County Com'rs of Bernalillo County.

Morton S. Simon, Jane B. Yohalem, Simon & Oppenheimer, Santa Fe, for plaintiffs-appellees American Federation of State, County & Mun. Employees, AFL–CIO.

OPINION

HARTZ, Judge.

This case raises questions concerning the relative powers of an elected county treasurer and an elected board of county commissioners. The Bernalillo County Treasurer (the Treasurer), initially Robbin Bishop and now Patrick J. Padilla, appeals the portion of a district court judgment requiring the Treasurer to comply with the merit personnel system and collective-bargaining agreements adopted by the Board of County Commissioners of the County of Bernal-

illo (the Board). The Treasurer also appeals the district court's determination that the Board, acting as the Bernalillo County Board of Finance, has sole responsibility for the investment policy of the county. We affirm the judgment with respect to the merit system and collective-bargaining agreements, and reverse on the investment-policy issue.

FACTS

The Board, together with New Mexico Public Employees Council 18 and Local 2260 of the American Federation of State, County and Municipal Employees, AFL-CIO (Unions), filed a complaint against the Treasurer seeking declaratory relief and a writ of mandamus. The complaint alleged that the Treasurer had failed to comply with county-ratified collective-bargaining agreements, the county merit personnel system, and various county procedures regarding finance and administration. The Treasurer answered and filed a counterclaim for declaratory judgment in its favor with respect to essentially the same issues.

Ultimately the parties submitted to the district court a statement of the issues that they wished to be resolved by the court and stipulated to certain general facts. Neither party offered into evidence the particulars of the county's merit system or collective-bargaining agreements. The district court was asked to determine whether the Board had any authority to adopt a merit system or enter into collective-bargaining agreements covering the Treasurer's employees.

Because the specifics of the merit system and collective-bargaining agreements were not before the district court, it had no occasion to decide whether particular provisions exceeded the authority of the Board with respect to the Treasurer's office. At oral argument counsel for the Board and Unions agreed that the Treasurer was not foreclosed from a future challenge to the particulars of the merit system or collective-bargaining agreements insofar as they might be alleged to infringe improperly upon the powers of the Treasurer. Given the limited nature of the issues on appeal, we grant the Treasurer's motion to strike references in the briefs to the specific contents of the county's merit system ordinance.

COLLECTIVE-BARGAINING AGREEMENTS AND MERIT SYSTEM

■ The Board possesses the "powers of a county as a body politic and corporate." NMSA 1978, § 4-38-1 (Repl.Pamp. 1984). The Treasurer does not dispute the general authority of the Board to enter into collective-bargaining agreements with county employees. Our supreme court has determined that legislation is not necessary to confer that authority upon public bodies. See Local 2238 of the Am. Fed'n of State, County & Mun. Employees, AFL-CIO v. Stratton, 108 N.M. 163, 769 P.2d 76 (1989). Cf. NMSA 1978, § 4-38-18 (Repl.Pamp. 1984) (board of county commissioners has authority to "represent the county and have the care of ... the management of the interest of the county").

■ Nor does the Treasurer challenge the general authority of the Board to enact a merit personnel system. NMSA 1978, Section 4-37-1 (Repl.Pamp.1984) provides in part, "All counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties." The Board can therefore rely upon NMSA 1978, Section 3-13-4(A) (Repl.1985), which provides in part, "Any municipality may establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal employees."

The Treasurer contends, however, that to the extent that the Board attempts to impose a collective-bargaining agreement or merit system upon employees of the Treasurer, the Board exceeds its powers.

1. *Legislative History*

■ We first consider the contention that legislative history establishes the Board's lack of authority to impose a merit system on the Treasurer's personnel. The legislation enabling municipalities to establish merit systems, Section 3-13-4, was enacted in 1965. The legislation granting

counties the same powers as municipalities, Section 4–37–1, was enacted in 1975. The Treasurer contends that the legislature must have recognized that Section 4–37–1 did not give boards of county commissioners authority to enact merit systems covering other county-wide elected officials, because otherwise it would not have also enacted in the same session NMSA 1978, Sections 4–41–5 to –7 (Repl.Pamp.1984). Those statutory provisions authorize counties to establish merit systems for deputies and employees of county sheriffs' offices. As the Treasurer states in the brief-in-chief, "If the county commissions already had that power by virtue of [Section] 4–37–1, enacted in the same session, then the statute relating to sheriffs was superfluous."

This argument fails to consider that the statute providing for merit systems covering sheriffs' employees was enacted before the statute giving boards of county commissioners the same powers as municipalities. *See* 1975 N.M.Laws, ch. 11, § 3 (sheriffs' merit system); 1975 N.M.Laws, ch. 312, § 1 (county commissioners have powers of municipalities). Thus, the statute relating to sheriffs' offices may have been proposed and passed because of doubt about whether the legislature would later enact a law granting more general powers to boards of county commissioners. In the absence of any authoritative legislative history, we can only speculate concerning the legislature's understanding and intention in this regard. The enactment of Sections 4–41–5 to –7 does not assist in resolving the issue presented here.

### 2. *Separation of Powers*

■■■ We also hold that traditional separation-of-powers doctrine does not apply to this case. Traditional doctrine derives from concern about the tyranny that can arise when one branch of government—the executive, legislative, or judicial—assumes the powers of another. *See* A. Hamilton, *The Federalist* Nos. 46 to 50 (H. Lodge ed. 1888). Apparently because this danger is diminished for a level of government whose powers are subordinated to higher levels of government or otherwise limited, the New

Mexico Constitution's provision on separation of powers—Article III, Section 1 (Cum. Supp.1990)—does not apply to the distribution of power within local governments. *See State ex rel. Chapman v. Truder,* 35 N.M. 49, 289 P. 594 (1930). *Cf. Mowrer v. Rusk,* 95 N.M. 48, 618 P.2d 886 (1980) (excessive control by city council over municipal court violates N.M. Const. Article III, Section 1 and Article VI, Section 1, which vests the judicial power of the *state* in various courts, including inferior courts). For example, the legislature has provided that the board of county commissioners—which possesses the "legislative" power of the county—may appoint the county manager, who exercises executive power. NMSA 1978, § 4–38–19(B) (Repl.Pamp. 1984). Any limitations on the Board's authority to impose a merit system or collective-bargaining agreement upon the Treasurer must derive from other sources.

### 3. *The Statutory Scheme for Apportioning Power*

■■■ The statute providing counties with the same powers granted to municipalities limits those powers only insofar as they "are inconsistent with statutory or constitutional limitations placed on counties." § 4–37–1. Consequently, the sole restriction on applying a county merit system to employees of the Treasurer is that such application be consistent with statutory and constitutional provisions relating to the powers of boards of county commissioners vis-a-vis county treasurers.

This is also the sole restriction on the power of the Board to apply a collective-bargaining agreement to the Treasurer's staff. If Section 4–37–1 encompasses inherent powers of municipalities, as opposed to only statutory powers, then the county's inherent power to bargain collectively is limited in the same way as the county's statutory power to enact a merit system. In any event, even if Section 4–37–1 does not cover collective bargaining, our supreme court has indicated that this inherent power must be exercised consistently with state law. *See Local 2238 of the Am. Fed'n of State, County & Mun. Employ-*

*ees, AFL–CIO v. Stratton,* 108 N.M. at 170–71, 769 P.2d at 83–84.

What, then, is the relative authority of the Treasurer and the Board? The New Mexico Constitution is silent. Counties are recognized in the constitution, *see* Article X, but the constitution does not provide for the mechanisms of county government, and does not so much as mention county treasurers.

Therefore, we look to the statutes defining the powers of county offices. The office of the county treasurer is established by NMSA 1978, Section 4–43–1 (Repl.Pamp. 1984). The powers of the office appear in various statutory provisions, e.g., NMSA 1978, Sections 4–43–2 to –4 (Repl.Pamp. 1984); NMSA 1978, Sections 6–10–10 (Cum. Supp.1990), –10.1, –23, –24, –36, –44, and –44.1 (Repl.Pamp.1988); NMSA 1978, Sections 7–38–42, –53 (Repl.Pamp.1990).

■■■ A grant of power by the legislature to an elected local official in itself implies limitations on the power of other local officials with respect to that elected official. By granting the voters of a county the right to elect a person to an office charged with certain duties, the legislature implicitly provided that the electorate can hold that person responsible for the proper performance of the office. Yet that person cannot fairly be held accountable if other elected officials infringe too intrusively upon the performance of the duties of the office. In particular, the exercise by the Board of excessive power over the Treasurer would undermine the statutory scheme of providing the county electorate with the right to choose, and hold responsible, an official with the duty to perform the functions of the county treasurer. *See State ex rel. Miera v. Field,* 24 N.M. 168, 172 P. 1136 (1918) (county commission not empowered to hire someone to perform task of county assessor).

■■■ On the other hand, the implicit grant of independent authority to local elected officials is subject to legislative grants of power to one official over another. As noted in the above discussion of separation-of-powers doctrine, there are no constitutional constraints on the state legislature's apportioning of authority between the Treasurer and the Board. Regardless of the impact on the Treasurer's performance of the duties of the office, the legislature can specify the relationship between the Treasurer and the Board. For example, Section 4–38–19(A) provides:

> A board of county commissioners may set the salaries of such employees and deputies as it feels necessary to discharge the functions of the county, except that elected county officials have the authority to hire and recommend the salaries of persons employed by them to carry out the duties and responsibilities of the offices to which they are elected.

The Board, not the Treasurer, sets the salaries of the Treasurer's employees.[1] Similarly, various provisions of NMSA 1978, Chapter 6, Article 10 (discussed more fully later in this opinion) delineate the relative powers of the Board and the Treasurer with respect to investing county funds.

■■■ In sum, a board of county commissioners does not unlawfully infringe upon a county treasurer's prerogatives unless it undermines the treasurer's ability to perform the duties of the office by means that are not granted to the board by statute. We hold that ordinances providing for merit systems or collective-bargaining agreements can pass that test.

■■■ Our conclusion with respect to collective-bargaining agreements follows from the statutory provision that the Treasurer can only "recommend" the salaries of subordinates. § 4–38–19(A). If the Board has the authority to set those salaries, the Board can collectively bargain for those salaries without violating the statutory scheme, at least so long as the Treasurer may participate in the bargaining to the extent of recommending salaries for employees of that office. We also believe that

---

1. We need not consider whether this power is unlimited or whether the Board would be prohibited from setting salaries so low that the Treasurer could not obtain a competent staff.

*Cf. Mowrer v. Rusk,* 95 N.M. at 54, 618 P.2d at 892 (right to hire staff implies right to have staff paid salaries commensurate with their responsibilities).

restrictions imposed by a collective-bargaining agreement upon the Treasurer with respect to work hours and leave time for most employees would not ordinarily undermine the Treasurer's capacity to perform the duties of the office.

■ Likewise, although "elected county officials have the authority to hire ... persons employed by them to carry out the duties and responsibilities of the offices to which they are elected," § 4–38–19(A), merit systems do not necessarily infringe upon that authority or upon the ability of the Treasurer to perform the duties of the office. For example, we would see no violation of the statutory scheme if a personnel ordinance required certain procedural safeguards before a non-key employee could be discharged. *Cf. United States v. Perkins,* 116 U.S. 483, 6 S.Ct. 449, 29 L.Ed. 700 (1886) (power of Congress to vest appointment of inferior officers in heads of departments implies authority to limit, restrict, and regulate the power of removal, and such authority does not infringe upon constitutional prerogatives of the Executive).

We exercise caution in suggesting what provisions could pass muster in a Board-mandated collective-bargaining agreement or merit system covering employees of the Treasurer, because any such comments would be essentially dictum. We do not have before us the specifics of a collective-bargaining agreement or personnel ordinance. The propriety of any particular provisions should be determined in the first instance by a district court after a hearing at which the parties can present evidence and argument concerning whether the provisions improperly infringe upon the prerogatives of the Treasurer. By stipulation the parties elected not to present this dispute to the district court in that manner.

Our holding is only that there is no statutory impediment *in general* to the Board's adoption of a merit system or approval of a collective-bargaining agreement that includes at least some employees of the Treasurer. The Treasurer has failed to show that all such ordinances and agreements necessarily infringe improperly upon the authority of the Treasurer. The Board and

Unions conceded at oral argument that this litigation does not foreclose future challenge by the Treasurer to specific provisions of a collective-bargaining agreement or merit system.

INVESTMENT POLICY

In district court the parties framed the investment-policy issue in quite general terms. Their stipulation stated:

7. The County Treasurer, pursuant to statutory mandate, feels that she has the authority to make all investments of County funds.

8. The County Commission, as the designated Board of Finance, feels they should determine investment policy of the County and direct investment of County funds.

The district court's order was similarly general. The court ruled: "The County Commission is designated as the County Board of Finance and as such is responsible for the investment policy of the County. This authority can not be delegated by the County Commission."

The precise scope of the ruling is unclear, although the parties apparently agree in reading it to say that the Treasurer has only a ministerial role in the investment of county funds—all matters of discretion being left to the Board in its exclusive policy-making role as the county board of finance. Because we hold that the authority of the Treasurer in investment policy is not merely ministerial, we reverse.

By statute the board of county commissioners in each county constitutes a "county board of finance." NMSA 1978, § 6–10–8 (Repl.Pamp.1988). The title provides little guidance concerning the division of responsibility between a county board of finance and a county treasurer. The term "board of finance" is not such a term of art that one can immediately infer a board's powers and duties. For that, one must look to the relevant statutory provisions. Reading the current statutes in light of their legislative history compels the conclusion that the Board's power is limited to reviewing investment decisions by the Treasurer and then either approving or vetoing them.

The original legislation creating county boards of finance suggested that those boards controlled investment policy. 1915 N.M. Laws, Chapter 57, Section 5 stated that each board of county commissioners shall "constitute a county board of finance, and as such shall have *supervision of the deposit and safe keeping of the public monies of their respective counties,* as hereinafter provided." (Emphasis added). *See State v. Fidelity & Deposit Co. of Maryland,* 36 N.M. 166, 9 P.2d 700 (1932) (suggesting that board of finance directs treasurer where to deposit money).

In 1933, however, the legislature transferred that supervisory authority to the county treasurer, gave the board a more limited supervisory power, and restricted some of the treasurer's power by requiring it to be exercised only with the "advice and consent" of the board. 1933 N.M. Laws, Chapter 175, Section 1 (now § 6–10–8) revised the law to read that the county treasurers, rather than the boards of finance, "shall have supervision of the deposit and safe keeping of the public moneys of their respective Counties." The description of the supervisory power of county boards of finance was changed to "supervision over the determination of the qualifications of, and selection of, banks to receive the public moneys of their respective Counties." Instead of having supervision of the deposit and safekeeping of public money, the county boards of finance would merely determine which banks could be depositories for county funds. Under the new law the county treasurers would, "with the advice and consent" of their county boards of finance, "designate banks qualified to receive on deposit all moneys entrusted in their care." (The language was clarified by deletion of the word "qualified" in 1968 N.M. Laws, Chapter 18, Section 2.)

The 1933 legislation made a similar change in the relative authority of the board of finance and the treasurer with respect to investments in government securities. 1925 N.M.Laws, Chapter 33, Section 1 provided that sinking funds, unexpended bond proceeds, and money not immediately necessary for public use could be invested by the board of finance in government bonds and negotiable securities. 1933 N.M.Laws, Chapter 175, Section 4 (now Section 6–10–10(F)) gave the same investment power to the county treasurer, "by and with the advice and consent" of the board of finance.

The 1933 amendments make no sense if the county treasurer's role in the investment of county funds is merely a ministerial one. If the role is merely ministerial, what was the purpose of the legislature in giving powers to the county treasurer "with the advice and consent" of the board of finance when the powers had previously been granted solely to the board of finance?

 The relationship between the county treasurer and the county board of finance was undoubtedly intended to be the same as that between the President of the United States and the Senate when the former can act only with the "advice and consent" of the Senate. *See* U.S. Const. art. II, § 2. We are aware of no other usage of the phrase "advice and consent," and we can assume that the elected officials who enacted the 1933 legislation were thoroughly familiar with the meaning of that language in the United States Constitution. Thus, decisions concerning the placement of county funds in depository institutions and the investment of county funds in government securities are, in the first instance, a matter for the county treasurer; the board of finance has a veto power over every such decision, but it does not have the power of choice itself. *See* A. Hamilton, *The Federalist* No. 66, at 416 (H. Lodge ed. 1888); *Fourteen Diamond Rings v. United States,* 183 U.S. 176, 182, 22 S.Ct. 59, 61, 46 L.Ed. 138 (1901) (Brown, J., concurring); *Murphy v. Casey,* 300 Mass. 232, 15 N.E.2d 268 (1938); *Commonwealth ex rel. Attorney General v. Lane,* 13 Weekly N.C. 29, 32 (Pa.1883).

 The same relationship is described in other provisions governing investments of county funds. Legislation predating 1933 empowers the county treasurer, "with the approval of the proper board of finance," to invest excess funds temporarily

in United States bonds or treasury certificates in compliance with rules of the state board of finance. 1925 N.M. Laws, ch. 123, § 10 (now § 6–10–44). We give the words "with the approval of" their common meaning and construe them as establishing an advice-and-consent relationship between the county treasurer and the board of finance with respect to such investments. *See* J. Harris, *The Advice and Consent of the Senate* at 34 (1953) (in debates of federal constitutional convention "the phrase 'advice and consent' was used * * * as synonymous with such terms as 'approval,' 'approbation,' and 'concurrence.' "); *Board of Comm'rs of Colfax County v. Department of Pub. Health*, 44 N.M. 189, 100 P.2d 222 (1940) (construing "with the approval of" as establishing a veto power).

 Likewise, 1988 legislation giving the county treasurer power, "with the consent" of the board of finance, to place county funds in the state treasurer's "local short-term investment fund," § 6–10–10.1, maintains the same relationship between the county treasurer and the board of finance. *Cf. In re Opinion of the Justices*, 190 Mass. 616, 78 N.E. 311 (1906) ("with the advice" and "with the advice and consent" have same legal effect).

 Two 1987 statutory provisions intended to give various public boards of finance and treasurers (not just *county* treasurers and *county* boards of finance)[2] power to deposit public funds in federally insured credit unions may seem to change the relationship between the county treasurer and the county board of finance because they permit the deposit by a "treasurer or board of finance," § 6–10–44.1, or "at the discretion of the designated board of finance or treasurer." § 6–10–36(D). We do not, however, read those provisions as giving the county treasurer and the board of finance co-equal powers with respect to such deposits. The same law—1987 N.M. Laws, Chapter 79—that added Sections 6–10–36(D) and –44.1 also inserted

a reference to credit unions in Section 6–10–8, which now provides:

> The county treasurer of each county in the state shall have supervision of the deposit and safekeeping of the public money of his county * * * and by and with the advice and consent of the [county board of finance] * * * shall designate banks, savings and loan associations *and credit unions* * * * to receive on deposit all moneys entrusted in his care. [Emphasis added.]

We reconcile the language in Sections 6–10–36(D) and –44.1 with that in Section 6–10–8 by construing the first two sections as not being intended to alter the relative authority of the county treasurer and the county board of finance. To do otherwise could create an absurd situation. If either the county treasurer or the board of finance could independently determine whether or not to deposit county funds in a credit union, then either party could overrule the other's prior decision, wreaking havoc with public finances. We make every effort to avoid statutory constructions that can create such absurd consequences. *See Wells v. County of Valencia*, 98 N.M. 3, 6, 644 P.2d 517, 520 (1982). Sections 6–10–36(D) and –44.1 were intended to permit deposits in credit unions by treasurers and boards of finance of various public bodies (not just counties), leaving to other statutory provisions the question of the relative responsibilities of the two in making an investment decision.

 We take the same approach in dealing with NMSA 1978, Section 6–10–31 (Repl.Pamp.1988), which permits boards of finance to place public funds not "needed immediately for public purposes" on time deposit with various depository institutions. This provision was originally enacted by 1929 Laws, Chapter 92, Section 1, before the 1933 legislation transferring powers from the county board of finance to the county treasurer. The statute was not,

---

**2.** There are numerous boards of finance other than county boards of finance. For example, NMSA 1978, Section 6–10–9 (Repl.Pamp.1988) states: "The boards in control of the various public and educational institutions in this state,

and all other boards handling funds in any manner whatever, except local boards of education, are hereby designated as boards of finance for such institutions and boards respectively."

however, amended in 1933. Perhaps this was the result of an oversight because it was codified in an article of the 1929 revised statutes different from the article containing the provisions amended in 1933. The provision remained unchanged until 1968, when it was amended to permit time deposits in savings and loan associations and to prohibit county and municipal boards of finance from making deposits outside of the county. 1968 N.M. Laws, ch. 18, § 7. Because the 1929 legislature certainly contemplated that the board of finance would be the body deciding whether to invest funds in time deposits, and because this particular section has not been revised in that respect since its enactment, one might conclude that time deposits are to receive unique treatment among all county investments—time deposits alone are to be determined solely by the board of finance. We think it highly unlikely that the legislature intended such a peculiar result. The provisions of the 1933 legislation governing "deposits" in banks and other depository institutions should be read to encompass "time deposits." Under that reasonable construction, the 1933 legislation and later amendments implicitly amended the 1929 provision. We interpret Section 6–10–8 to provide that the county treasurer, "with the advice and consent" of the board of finance, "designates [the institutions] to receive on deposit [including time deposit] all moneys entrusted in his care."

■ In sum, the county treasurer determines how to deposit and invest county funds. That decision must then be approved by the board of county commissioners, sitting as the county board of finance. The board of finance has no power to modify the county treasurer's decision without the treasurer's concurrence. On the other hand, the county treasurer cannot impose a unilateral decision upon the board of finance.

Given this relationship between the Treasurer and the Board, it is inappropriate to speak of either as having the sole policy-making authority over county investments. Both the Treasurer and the Board would be well-advised to formulate an investment policy. Adoption of a policy by the Board would provide the Treasurer with fair warning that certain types of investments are preferred and certain investments are prohibited. The Treasurer's investment policy could serve as a useful tool to explain to the Board the Treasurer's investment decisions and obtain the necessary approval. Ultimately, the Board and the Treasurer must agree on any investment; negotiation of any differences in policy should expedite decision-making on any particular investment.

■ Moreover, we see no statutory prohibition against delegation to the Treasurer by the Board of specific investment decision-making. For example, the Board could adopt a policy and permit the Treasurer to make investment decisions that conform to the policy. Such delegation may be essential to enable the Treasurer to respond to sudden changes in the financial markets.

Because the district court's order can be read as eliminating the authority of the Treasurer in investment decision-making and as prohibiting the Board from delegating authority to the Treasurer, we vacate the portion of the order relating to county investment policy. If either party wishes to press the district court for a declaratory order regarding investment policy, it may do so. The parties may, however, agree to abandon the issue on remand; this opinion may suffice, at least for the time being, to provide the guidance sought by the parties' petitions for declaratory judgment.

CONCLUSION

We affirm the judgment of the district court with respect to the merit system and collective-bargaining agreement. We vacate the judgment of the district court with respect to county investment policy.

IT IS SO ORDERED.

BIVINS and APODACA, JJ., concur.