1997-NMCA-086

945 P.2d 452

**Nelson WELCH and Nina Welch,
Plaintiffs–Appellants,**

v.

**SANDOVAL COUNTY VALUATION PRO-
TESTS BOARD and Office of the San-
doval County Assessor, Defendants–Ap-
pellees.**

**No. 17850.**

Court of Appeals of New Mexico.

July 31, 1997.

Certiorari Denied Sept. 17, 1997.

Christina J. Bruff, Albuquerque, for Plaintiffs–Appellants.

Theodore C. Baca, Bernalillo, Robert J. Desiderio, Albuquerque, for Defendants–Appellees.

*OPINION*

HARTZ, Chief Judge.

(1) Pursuant to New Mexico's statehood compact with the United States, the New Mexico Constitution forbids the State from imposing upon an Indian tribe any property tax with respect to the tribe's reservation lands. N.M. Const. art. XXI, § 2. Under our Property Tax Code, NMSA 1978, ch. 7, arts. 35 to 38 (Repl.Pamp.1995), Indian tribes therefore come within the definition of "exempt entity." *See* § 7–36–4(A)(2). Nonexempt entities—that is, all persons who are not exempt entities, § 7–36–4(A)(4)—may benefit from a tribe's immunity from taxation. The Code for the most part exempts from taxation any "fractional interest" of a nonexempt entity in real property of an exempt entity. *See* § 7–36–4(B). The term "fractional interest" is defined by the Act as "a tangible interest in real property ... that is less than the total of the interests existing in the property," subject to certain exceptions. Section 7–36–4(A)(1). The exception at issue on this appeal is for a "lessee's interest under a lease when the term of the lease is more than seventy-five years." *Id.*

(2) This appeal presents the following questions: (1) If a lease had an original term of more than 75 years but has less than 75 years remaining, is the leasehold interest a "fractional interest" under the statutory definition? (2) If such an interest is not a "fractional interest," does the Code violate constitutional guarantees of equal protection and uniform taxation? and (3) Does the State have the constitutional authority to impose a property tax on a lease of reservation land by a non-Indian? Answering "no" to the first two questions and "yes" to the third, we affirm the imposition of the property tax in this case.

**BACKGROUND**

(3) In 1969 the Pueblo de Cochiti, an Indian tribe, leased 7000 acres of reservation land for 99 years under a master lease to a private corporation. The master lease provides for subleases for residential lots. Nelson and Nina Welch (Taxpayers) entered into such a sublease for two lots. The sublease obligates Taxpayers to pay any taxes that may be imposed on the leasehold interest. In May 1996 Taxpayers filed a protest of the assessment of their property with the Sandoval County Valuation Protest Board (the Board). The Board rejected Taxpayers' claim that their leasehold interest in the land was exempt from taxation. Taxpayers appeal pursuant to NMSA 1978, Section 7–38–28. There being no disputed material facts, the sole concern is whether the decision of the Board was "not in accordance with law." Section 7–38–28(B)(3).

**DISCUSSION**

**A. Definition of "Fractional Interest"**

(4) Most leases are "fractional interests" under the Property Tax Code. *See* § 7–36–4(A)(1). But the definition of "fractional interest" excludes "the lessee's interest under a lease when the term of the lease is more than seventy-five years." *Id.* Taxpayers contend that even if the original term of a lease exceeds 75 years, once the remaining term of the lease is 75 years or less, the lessee's interest becomes a fractional interest. They argue that this is the only reasonable construction of the statutory language because otherwise the law would create illogical distinctions, such as exempting a taxpayer during the first year of a 70–year lease while taxing a taxpayer in the sixth year of a 75–year lease, even though their interests in their respective properties are identical for all practical purposes. (This argument also forms the basis of their constitutional chal-

lenge to the statutory definition if we reject their interpretation.)

■■■■ (5) Although Taxpayers' argument is not without force, we are not persuaded. Unless the context suggests some specialized meaning, we interpret a statute in accordance with the common meaning of the statutory language. *See Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 736, 906 P.2d 266, 268 (Ct.App.1995). The question before us is the meaning of the phrase "the term of the lease." In particular, how is that phrase to be interpreted during the course of the lease, after the lease has been entered into but before it has expired? In our view, the common usage of the phrase is the full, original term of the lease, not the time remaining under the lease. An apartment tenant with a one-year lease describes the lease as a one-year lease throughout the course of the tenancy, regardless of whether the tenant is about to move to the apartment or has lived there one week, one month, or eleven months. After the tenant has been there eleven months, a friend would find it peculiar for the tenant to describe the lease as a "one-month lease" simply because there is only one month remaining on the one-year term. Likewise, those in business who, for example, lease space in a shopping center will describe their leases as five-year leases, regardless of how brief the time before the lease expires. In short, one thinks of the "lease" as the entire agreement between the lessor and lessee, and the "term of the lease" as the length of the tenancy set forth in that agreement.

(6) Such a reading appears to have been assumed in similar circumstances by courts of other jurisdictions. Several states now have, or once had, statutes similar to Section 7–36–4 in that they impose a property tax on a leasehold interest exceeding a certain term when the owner of the fee is exempt from taxation but the lessee is not. Although we have found no reported decision in which the court has addressed an argument by the taxpayer that the property tax can no longer be assessed once the remaining term of the lease is less than the statutory threshold (a fact which may in itself suggest the common meaning of the statutory language), the lan-

guage in several opinions indicates that such an argument would fail.

(7) The most suggestive of these opinions is *Zumstein v. Consolidated Coal & Mining Co.,* 54 Ohio St. 264, 43 N.E. 329 (1896). The Ohio statute provided that " '[a]ll lands held under lease for any term exceeding fourteen years [belonging to a municipality, etc.] shall be considered for all purposes of taxation as the property of the person or persons holding the same.' " *Id.* at 330 (quoting Ohio Rev. Stat. § 2733). There were two leases under consideration. One was a 20–year lease beginning in 1881; the other was a 15–year lease beginning in 1882. Because the tax years at issue were 1881 to 1887, the case covered years in which fourteen or fewer years remained on at least one of the leases. The question before the court was whether the tax could be imposed on the fee. The court ruled in favor of the taxpayer on that point. But the court appeared to assume that the *leasehold* interests were taxable for each of the tax years, stating that the "taxability [of the properties] results from the fact that they are held under leases from the city for terms exceeding 14 years." *Id.* at 330. The Court was undoubtedly referring to the original term, because the remaining term was less than 14 years for some tax years under consideration. *See also Trammell v. Faught,* 74 Tex. 557, 12 S.W. 317 (1889) (identifying the "lease" with the original contract and apparently measuring the term of the lease by the original term stated in the contract); *In Matter of Appeal of Denial of Real Estate Tax Exemption for Black Hills Legal Services,* 563 N.W.2d 429, 432 (S.D. 1997) ("[T]he legislative intent [is] to tax otherwise exempt property when it is leased to nonexempt entities for the required term."); *Farms Country Club v. Carini,* 172 Conn. 439, 374 A.2d 1094 (1977) (statutory language clearly refers to original term of lease).

(8) We also note supporting authority from a somewhat different area of the law. In *Foreman Automobile Co. v. Morris,* 198 Ky. 1, 248 S.W. 486 (1922), the issue was whether a lessee forfeited a lease by assigning its interest without approval of the lessor. A Kentucky statute provided for forfeiture in

those circumstances if the assignment was by a tenant "who has a term less than two years." *Id.* at 487 (quoting Ky.Stat. § 2292). The court reaffirmed its holding in *Grizzle v. Pennington,* 77 Ky. 115, 14 Bush 115, "that a tenant who originally had a term for two years or more could not be dispossessed under this section of the Statutes, even though he had occupied the premises for a portion of the time and the remaining portion was less than two years." *Foreman Auto. Co.,* 248 S.W. at 487.

(9) To be sure, we have found no holding directly in point. But neither have Taxpayers provided any authority indicating a different interpretation of the phrase "term of the lease." The above authority, although it might be characterized as merely suggestive, confirms our view that the natural reading of the statutory language is that the "term of the lease" is the term stated in the original contract.

(10) Nor do we believe that interpreting "term" to mean the "original term" creates such an absurd result that the legislature must surely have intended Taxpayers' interpretation of the statutory language. The legislature apparently elected to tax only those leases (from an exempt entity to a nonexempt entity) whose duration is so long that the lessor could be said to have relinquished the fundamental attributes of its fee ownership. This is essentially what Taxpayers say in their brief in chief when they describe the goal of the provision as "raising revenue from interests in real property that were of sufficient duration to be the functional equivalent of a real property interest." Once the legislature has decided to impose the property tax on such leasehold interests, we see nothing absurd in the imposition of that tax every year until the land reverts to the exempt entity at the expiration of the lease. (Of course, the value of the leasehold estate may diminish as the end of the term approaches, but valuation issues are not before us on this appeal.)

(11) Thus, in our view, the meaning of the statutory language is clear. Whether the statute as thus interpreted creates unconstitutional distinctions is the issue we next address.

## B. Equal Protection and Uniform Taxation

(12) As previously noted, Taxpayers contend that Section 7–36–4 draws an unconstitutional distinction between two lessees of exempt real property who have the identical length of time remaining on their leases. One whose lease had an original term greater than 75 years is subject to a property tax on the leasehold interest, whereas one whose lease had an original term of less than 75 years would not be subject to such tax. Taxpayers claim that this distinction violates their rights to equal protection under the law, *see* U.S. Const. amend. 14, § 1; N.M. Const. art. II, § 18, and the requirement that "taxes shall be equal and uniform upon subjects of taxation of the same class." N.M. Const. art. VIII, § 1. In this context the test for validity is the same under each of the three constitutional provisions. *See Anaconda Co. v. Property Tax Dep't,* 94 N.M. 202, 210, 608 P.2d 514, 522 (Ct.App.1979). A classification under the tax laws satisfies the constitutional requirements if there is a rational basis for the classification. *See id.*

(13) A rational basis exists for the classification created by Section 7–36–4. The purpose of the statute is to tax leases that are so long as to be the practical equivalent of a fee interest. Logic alone cannot determine what that length of time is. A broad range of choices was available to the legislature. One might describe as arbitrary the selection of a specific time within that range to mark the dividing line, but any such choice is nevertheless rational. *See Califano v. Aznavorian,* 439 U.S. 170, 174, 99 S.Ct. 471, 473–74, 58 L.Ed.2d 435 (1978) (lines drawn in social welfare legislation "necessarily are sometimes arbitrary" yet do not deny equal protection); *cf. Nordlinger v. Hahn,* 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992) (standard of equal-protection review is especially deferential in tax context); *Anaconda,* 94 N.M. at 210, 608 P.2d at 522 (same). Certainly, 75 years is within the range of reasonable choices.

(14) Taxpayers argue that Section 7–36–4 creates an irrational classification because

one with a 76–year lease is *taxed every year* of the lease, whereas one with a 74–year lease is *never taxed.* In particular, when both lessees have, say, 20 years left on their leases, only the one with the 76–year lease must pay property taxes, yet both have the same remaining leasehold interest. The argument has some attraction. But it goes too far when it suggests that a statute cannot consider the past when setting forth the legal consequences of a particular present situation. From laws on teacher tenure to habitual-offender sentencing, statutes appropriately consider what got a person to where he, she, or it is at the time a legal consequence is imposed. In deciding when or how to impose a property tax, it is not irrational for the legislature to consider the original term of the lease rather than only the remaining term. In *Williams v. Jones,* 326 So.2d 425, 435–36 (Fla.1975), the court construed a Florida statute as providing that leases with original terms of 99 years or more should be taxed as if the lessee owned the fee interest, whereas shorter leases should be taxed on the basis of their economic value. The court wrote: "Since a lease for a term of 99 years or more is tantamount to ownership of the fee, we do not construe this to be an unreasonable classification by the Legislature." *Id.* at 436.

◼ (15) Finally, Taxpayers contend that the 75–year exception from the definition of "fractional interest" unconstitutionally discriminates against them because the master lease with the Pueblo de Cochiti is the only lease in the state subject to the provision. Presumably, they are claiming an invidious discrimination based on race—the race of the members of the leasing pueblo. On the present record, which includes no evidence regarding other leases of exempt property, this claim must fail. "[A] neutral state law that produces disproportionate effects along racial lines ... violates the Equal Protection Clause of the Fourteenth Amendment [only upon] [p]roof of racially discriminatory intent or purpose[.]" *Hunter v. Underwood,* 471 U.S. 222, 227, 105 S.Ct. 1916, 1920, 85 L.Ed.2d 222 (1985) (internal quotation marks deleted). The record establishes neither a disproportionate effect on Indians nor a discriminatory intent or purpose.

## C. Taxation of Leases on Indian Land

◼ (16) Taxpayers' third contention is that taxation of a leasehold interest on Indian land is prohibited by 33 Stat. 1048, 1069 (1905), which states that "the lands now held by the various villages or pueblos of Pueblo Indians ... within Pueblo reservations or lands, in the Territory of New Mexico ... shall be free and exempt from taxation of any sort whatsoever." (The state constitution has language to the same effect. N.M. Const. art. XXI, § 2.) We disagree. The leasehold interest acquired from the Pueblo de Cochiti is not "land[s] ... held by ... Pueblo Indians." It is property of the lessee. *See Cutter Flying Serv. v. Property Tax Dep't,* 91 N.M. 215, 219–20, 572 P.2d 943, 947–48 (Ct.App.1977) (opinion of Hernandez, J.) (discussing property taxation of leases at municipal airport). New Mexico has the authority to tax the property of non-Indian lessees of Indian land, even if the property is located on the reservation. *See Prince v. Board of Educ.,* 88 N.M. 548, 553, 543 P.2d 1176, 1181 (1975). Consequently, we reject Taxpayers' contention that the 1905 statute bars taxation of their leasehold interest. *See Fort Mojave Tribe v. San Bernardino County,* 543 F.2d 1253 (9th Cir.1976); *Pimalco, Inc. v. Maricopa County,* 188 Ariz. 550, 937 P.2d 1198 (Ct.App.1997); *see generally Jetton v. University of the South,* 208 U.S. 489, 500, 28 S.Ct. 375, 377–78, 52 L.Ed. 584 (1908) (state can tax lessee even though fee interest of lessor is exempt from property tax); *see generally* Maurice T. Brunner, Annotation, *Comment Note: Availability of tax exemption to property held on lease from exempt owner,* 54 A.L.R.3d 402, § 16 (1973).

## CONCLUSION

(17) For the above reasons, we affirm the decision of the Sandoval County Valuation Protests Board.

(18) **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.