3 P.3d 672

2000-NMSC-016

**BOARD OF COMMISSIONERS OF RIO ARRIBA COUNTY, Petitioners-Appellants,**

v.

**John M. GREACEN, in his individual and official capacities, Administrative Office of the Courts, Administration Human Resources, Fiscal Service Department, and State of New Mexico, Respondents–Appellees.**

No. 25,384.

Supreme Court of New Mexico.

April 24, 2000.

Butkus & Reimer, P.C., R. Galen Reimer, Albuquerque, for Appellants.

Patricia A. Madrid, Attorney General, Steven L. Bunch, Assistant Attorney General, Santa Fe, for Appellees.

Douglas W. Decker, Gallup, for Amicus Curiae Board of Commissioners of McKinley County.

Paul L. Biderman, Paul S. Nathanson, Pamela Lambert, Albuquerque, for Amici Curiae Judicial Education Center Institute of Public Law University of New Mexico School of Law.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Peter Franklin, Santa Fe, for Amicus Curiae New Mexico Finance Authority.

## OPINION

BACA, Justice.

{1} Petitioners, the Board of Commissioners of Rio Arriba County (collectively referred to as Rio Arriba), appeal an adverse trial court ruling granting summary judgment in favor of Respondents (collectively referred to as Greacen). The Court of Appeals, recognizing that this case presents significant questions of law under the New Mexico Constitution and issues of substantial public interest, certified the case to this Court. *See* NMSA 1978, § 34–5–14(C) (1972) (stating that the supreme court has appellate jurisdiction over "significant question[s] of law under the constitution of New Mexico" and "issue[s] of substantial public interest"). We accepted certification and now address whether Rio Arriba has the authority to enact local traffic ordinances and retain collected penalty assessments for violations of those traffic ordinances. We conclude that Rio Arriba does have the authority to enact county traffic ordinances. However, Rio Arriba does not have the authority to alter the comprehensive funding and allocation system of the Española Magistrate Court and therefore does not have the ability to retain any penalty assessments. We reverse in part and affirm in part.

### I.

{2} On September 25, 1997, Rio Arriba enacted the Rio Arriba Uniform Traffic Ordinances. *See* Rio Arriba County, N.M., Ordinances §§ RA–1–2 to –8–138 (1997). Both parties agree that the Rio Arriba Traffic Ordinances are substantially similar to the provisions of the State Motor Vehicle Code. *See* NMSA 1978, §§ 66–1–1 to –8–141 (1978, as amended through 2000). After the enact-

ment of the Rio Arriba Traffic Ordinances, county sheriff deputies issued citations to enforce the county traffic ordinances until they were enjoined from doing so by the district court on January 29, 1998. Rio Arriba then sought to enforce the citations that had been issued based on its county ordinances in the Española Magistrate Court. Believing the county ordinances to be unenforceable, the Administrative Office of the Courts directed the Española Magistrate Court not to enforce the citations. Rio Arriba then filed a petition seeking a writ of mandamus, or in the alternative, a complaint for declaratory and injunctive relief seeking to order enforcement of their county traffic ordinances in the Española Magistrate Court. After cross-motions for summary judgment, the district judge ruled in favor of Greacen, holding that Rio Arriba did not have the authority to enact the local motor vehicle ordinances and that the County had no authority to retain the penalty assessments derived from the county traffic ordinances. Rio Arriba filed a timely appeal, and the Court of Appeals properly certified the matter to this Court. We now address: (1) whether Rio Arriba has the authority to enact a local motor vehicle code; and (2) whether Rio Arriba has the authority to retain the penalty assessments collected by the Española Magistrate Court.

## II.

{3} This case was decided on a motion for summary judgment under Rule 1–056 NMRA 2000. Summary judgment is appropriate when the parties do not dispute the facts, but only the legal effect of those facts. *See Gardner–Zemke Co. v. State*, 109 N.M. 729, 732, 790 P.2d 1010, 1013 (1990). We review de novo the trial court's ruling on a motion for summary judgment to determine whether any genuine issues of material fact exist and whether the movant was entitled to judgment as a matter of law. *See* Rule 1–056(C); *Gallegos v. State Bd. of Educ.*, 1997–NMCA–040, ¶ 9, 123 N.M. 362, 940 P.2d 468. We find that no material issues of fact exist in this case, and since the disposition of this case turns solely on the resolution of legal issues, we conclude that the trial court's resolution of this matter on summary judgment was procedurally correct.

{4} This is primarily a matter of statutory construction and thereby concerns a pure question of law, subject to de novo review. *State v. Rowell*, 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). In this statutory review, we recognize that "it is part of the essence of judicial responsibility to search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). In deriving this legislative objective we must "give a statute its literal reading if the words used are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity or contradiction." *Atencio v. Board of Educ.*, 99 N.M. 168, 171, 655 P.2d 1012, 1015 (1982) (citing *State v. Nance*, 77 N.M. 39, 419 P.2d 242 (1966)). "Unless the context suggests some specialized meaning, we interpret a statute in accordance with the common meaning of the statutory language." *Welch v. Sandoval County Valuation Protests Bd.*, 1997–NMCA–086, ¶ 5, 123 N.M. 722, 945 P.2d 452.

## III.

{5} Rio Arriba County was recognized by the Territorial Government of New Mexico in 1852, and was later organized as a corporate and political body. 1876 N.M. Laws, ch. 1, § 1. This organization continued after New Mexico became a State on January 6, 1912. *See* NMSA 1978, § 4–38–1 (1876) ("The powers of a county as a body politic and corporate shall be exercised by a board of county commissioners."). Counties are recognized in Article X of the New Mexico Constitution; however, that Article does not define the existence or extent of county powers. Therefore, we must look to statutory and case law limitations placed on county powers. We have previously held, "A county is but a political subdivision of the State, and it possesses only such powers as are expressly granted to it by the Legislature, together with those necessarily implied to implement those express powers." *El Dorado at Santa Fe, Inc. v. Board of County Comm'rs*, 89 N.M. 313, 317, 551 P.2d 1360, 1364 (1976)

(citing *Dow v. Irwin,* 21 N.M. 576, 157 P. 490 (1916)); *see also* 56 Am.Jur.2d *Municipal Corporations* § 194, at 246–47 (1971) ("A county, as a subdivision of the state, and its board of commissioners or supervisors, as a creature of statute, have only such powers as are expressly conferred upon them by the state or are necessarily implied from those expressly given."). Therefore, we look for powers that were expressly granted to Rio Arriba by the Legislature or necessarily implied in the performance of an express power to justify the enactment of Rio Arriba's traffic ordinances.

{6} Rio Arriba argues that it has the express statutory authority to enact county traffic ordinances, despite the existence of the comprehensive State Motor Vehicle Code. *See* §§ 66–1–1 to –8–141. In support of this contention Rio Arriba advances three statutorily based justifications. The first two arguments are derived from the powers expressly granted to counties as provided in NMSA 1978, § 4–37–1 (1975):

> *All counties are granted the same powers that are granted municipalities* except for those powers that are inconsistent with statutory or constitutional limitations placed on counties. Included in this grant of powers to the counties are those powers *necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants.* The board of county commissioners may make and publish any ordinance to discharge these powers not inconsistent with statutory or constitutional limitations placed on counties.

(Emphasis added.) First, Rio Arriba highlights the language, "All counties are granted the same powers that are granted municipalities," to assert that it has the same powers as those granted to municipalities, and specifically the powers granted in the State Motor Vehicle Code in NMSA 1978, § 66–8–130(B) (1990) ("All penalty assessments under a municipal program authorized by this section shall be processed by the municipal court, and all fines and fees collected shall be deposited in the treasury of the municipality."). Second, Rio Arriba justifies its enactment of

the local ordinances by citing to the "police powers" invoked by the language, "necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants." Section 4–37–1; *see also Brazos Land, Inc. v. Board of County Comm'rs,* 115 N.M. 168, 174, 848 P.2d 1095, 1101 (Ct.App.1993) (referring to the power contained in Section 4–37–1 as "police powers"). Finally, Rio Arriba asserts that because counties are included in the definition of "local authorities" as defined by NMSA 1978, § 66–1–4.10(E) (1990), it should have all of the powers afforded local authorities. These powers include the specific authorization contained in NMSA 1978, § 66–7–8 (1978), to "adopt additional traffic regulations which are not in conflict with such provisions [of the Motor Vehicle Code]." We review each of these claims.

### A.

{7} Rio Arriba argues that the Legislature has expressly granted counties all the powers granted to municipalities, including the power to adopt its own traffic code. Rio Arriba directs our attention to Section 4–37–1 which states: "All counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties." Specifically, Rio Arriba invokes the language relating to municipalities contained in Section 66–8–130(A): "Any municipality may, by passage of an ordinance, establish a municipal penalty assessment program similar to that established in Sections 66–8–116 through 66–8–117 NMSA 1978 for violations of provisions of the Motor Vehicle Code ...." This rule contemplates the passage of a local penalty assessment program for violations of the State Motor Vehicle Code. Furthermore, NMSA 1978. § 3–17–6(A)(10) (1965), provides an express indication of the Legislature's intent to allow adoption of a traffic code by a municipality: "A municipality may adopt by ordinance the conditions, provisions, limitations and terms of [a] ... traffic code ...." Thus, when we read Section 3–17–6 together with Section 4–37–1, we conclude that counties

have the power to enact local traffic ordinances.

{8} We find support for this conclusion in our case law. The Court of Appeals discussed the relationship between an express legislative grant of power to municipalities and the corresponding county authority under Section 3–37–1 in *Board of County Commissioners v. Padilla*, 111 N.M. 278, 804 P.2d 1097 (Ct.App.1990). In *Padilla* the County argued that, under Section 4–37–1, it had the same powers the Legislature had granted to municipalities in NMSA 1978, § 3–13–4(A) (1965) to enter into a collective-bargaining agreement and to establish a merit-based personnel system. *Id.* at 282, 804 P.2d at 1101. The Court of Appeals stated,

> The statute providing counties with the same powers granted to municipalities limits those powers only insofar as they "are inconsistent with statutory or constitutional limitations placed on counties." § 4–37–1. Consequently, the sole restriction on applying a county merit system to employees of the Treasurer is that such application be consistent with statutory and constitutional provisions relating to the powers of boards of county commissioners vis-a-vis county treasurers.

*Id.* at 283, 804 P.2d at 1102. The Court then detailed the "relative authority of the [County] Treasurer and the Board [of County Commissioners]." *Id.* at 284–85, 804 P.2d at 1103–04. In upholding the County's power to enact the collective-bargaining and merit-based personnel system, the *Padilla* Court relied on Section 4–37–1, and the power granted to municipalities in Section 3–13–4(A) to "establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal employees." Likewise, in this case, based on the plain meaning of Section 4–37–1, granting counties the same powers as municipalities, and Section 3–17–6, granting municipalities the power to enact a traffic code, Rio Arriba, like a municipality, has the authority to adopt local county traffic ordinances. *See Atencio*, 99 N.M. at 171, 655 P.2d at 1015 (giving "a statute its literal reading if the words used are plain and unambiguous, provided such a construction would not lead to an injustice, absurdity or contradiction").

## B.

{9} Rio Arriba also correctly argues that it has all of the powers of a "local authority" as defined in 1978 NMSA, § 66–1–4.10(E) (1990). Section 66–1–4.10(E) defines local authorities as "every county, municipality and any local board or body having authority to enact laws relating to traffic under the constitution and laws of this state." This section assumes that counties would have the power to enact traffic ordinances by grouping counties with municipalities and other bodies "having authority to enact laws relating to traffic." *Id.*

{10} The powers expressly granted to "local authorities" contained in NMSA 1978, § 66–7–9(A) (1995), confirm this result. Section 66–7–9 provides:

> The provisions of the Motor Vehicle Code *shall not* be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from ... (7) restricting the use of highways as authorized in the Motor Vehicle Code; [or] ... (11) adopting other traffic regulations as specifically authorized by the Motor Vehicle Code;

(Emphasis added.) We are particularly convinced by the use of the mandatory language, "shall not" in Section 66–7–9. Also, the language quoted above indicates a clear legislative intent to allow local authorities to regulate traffic in their jurisdictions.

{11} Finally, Section 66–7–8, which provides for the uniform applicability of the Motor Vehicle Code, also supports Rio Arriba's claim by expressly reserving the power to local authorities to "adopt additional traffic regulations which are not in conflict with such provisions [of the Motor Vehicle Code]." Thus, Rio Arriba fits within the definition of a local authority, and has the powers of local authorities to enact traffic regulations.

## C.

{12} Finally, Rio Arriba seeks to justify enactment of their county traffic ordi-

nances by directing us to the "general welfare powers" or "police powers" that the New Mexico State Legislature has conferred to counties through Section 4–37–1. The exact provisions of Section 4–37–1 have rarely been construed by New Mexico courts and never in the context of Motor Vehicle regulations. *See Bolton v. Board of County Comm'rs,* 119 N.M. 355, 367, 890 P.2d 808, 820 (Ct.App. 1994) (citing Section 4–37–1 and Section 4–38–24 to conclude, "Indisputably, the County possesses the authority to construct or repair county roads within its boundaries."); *see also Brazos Land, Inc.,* 115 N.M. at 174, 848 P.2d at 1101 (citing Section 4–37–1 as justification for zoning regulation); *Board of County Comm'rs v. City of Las Vegas,* 95 N.M. 387, 389, 622 P.2d 695, 697 (1980) (citing Section 4–37–1 for county power to enact both "general police power ordinances and zoning ordinances" but deciding that regulation of a municipal landfill was not within the police power).

■ {13} Section 4–37–1 is clearly a grant of power to counties to enact ordinances that are "necessary and proper to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of any county or its inhabitants." Despite Rio Arriba's reliance on Section 4–37–1, Rio Arriba does not provide any evidence as to the necessity of their local ordinances. Nor does Rio Arriba relate the ordinances to any particular local problem that would justify the use of the general welfare power. Given that the State of New Mexico has adopted the comprehensive State Motor Vehicle Code, it is very difficult to comprehend how the Rio Arriba Code could further the safety and well-being of the local residents by merely duplicating the state regulations. Since the Rio Arriba ordinances substantially parallel the Motor Vehicle Code, we are suspicious of the public purpose that the Rio Arriba's traffic ordinances purports to further. Even a State legislative enactment based on the police powers of the state must be "reasonably necessary to prevent manifest evil or reasonably necessary to preserve the public safety, or general welfare." *Alber v. Nolle,* 98 N.M. 100, 105, 645 P.2d 456, 461 (Ct.App.1982) (citing *State v. Dennis,* 80 N.M. 262, 454 P.2d

276 (Ct.App.1969)). We believe that these same principles apply with equal force to local ordinances and local interests where the State has already sought to regulate the same or substantially similar conduct. Since Rio Arriba does not cite to any particular local "manifest evil" or other local "general welfare" concern, Rio Arriba's justification based on the general welfare clause must fail. *See id.*

{14} Despite Rio Arriba's failure to convince this Court that its duplication of the State Motor Vehicle Code furthered legitimate goals derived from its general welfare or police powers, we nonetheless conclude that the powers given to counties in Section 4–37–1 to exercise the powers of municipalities, and the powers granted to local authorities as contained in Section 66–7–8 and Section 66–7–9, dictate our holding that Rio Arriba has the statutory authority to enact motor vehicle ordinances. (*See* ante at Section III, A and B.) We now turn to potential conflicts between the county ordinance and State law.

## IV.

■ {15} Greacen correctly asserts that Rio Arriba can not adopt local ordinances that are inconsistent with those of the State. Counties are granted the same powers as those given to municipalities except for those that "are inconsistent with statutory or constitutional limitations placed on counties." Section 4–37–1. A further limitation on county powers is found in the Motor Vehicle Code. Section 66–7–8 provides: "The provisions of Article 7 of Chapter 66 NMSA 1978 [the State Motor Vehicle Code] shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any ordinance, rule or regulation in conflict with such provisions unless expressly authorized herein." Together, these statutory provisions provide sufficient support for us to adhere to the rule announced in *Casuse v. City of Gallup,* where we stated that "when two statutes that are governmental or regulatory in nature con-

flict, the law of the sovereign controls." 106 N.M. 571, 573, 746 P.2d 1103, 1105 (1987).

{16} Greacen argues the entire Rio Arriba Code is inconsistent with the State Motor Vehicle Code because it is designed to supplant or replace the State Motor Vehicle Code. This argument is not supported by New Mexico case law. In *State ex rel. Coffin v. McCall*, the defendant was convicted under the Carlsbad City Code of driving while under the influence. 58 N.M. 534, 273 P.2d 642 (1954). The defendant claimed that because the State had passed the State Motor Vehicle Code designed to ensure uniformity throughout the state, the city ordinance should be deemed inconsistent and invalid. *Id.* at 536, 273 P.2d at 642. In evaluating the alleged inconsistency this Court reasoned, "the test is whether the ordinance permits an act the general law prohibits, or vice versa." *Id.* at 537, 273 P.2d at 644; *accord* 7A Am.Jur.2d *Automobiles and Highway Traffic* § 21 at 550 (1997) ("A conflict exists when the local regulation is facially inconsistent with the state law, such as when the ordinance prohibits an act permitted by statute or permits an act prohibited by statute." (footnote omitted)). *McCall* held there was no invasion of State statutory authority where the local ordinance "merely complements the statute and is nowhere antagonistic therewith." 58 N.M. at 538, 273 P.2d at 644.

{17} There are a number of provisions of the Rio Arriba County Ordinances that we believe are antagonistic with New Mexico statutory law. For example, Rio Arriba purports to punish certain offenses deemed to be felonies with punishment up to imprisonment for eighteen months and/or a five thousand dollar fine. This is in direct conflict with NMSA 1978, § 4-37-3 (1993), which specifically and expressly limits the penalties that may be assessed by a county to "a fine of three hundred dollars ($300) or imprisonment for ninety days or both the fine and imprisonment."[1] These provisions are clearly contrary to and antagonistic with the limitations placed on county enforcement power contained in Section 4-37-3 and are therefore invalid.

{18} A second conflict is present within Rio Arriba County Ordinance 8-102, relating to driving under the influence of intoxicating liquor. *See* RA-8-102. In that section, Rio Arriba purports to regulate all persons within the State: "It is unlawful for any person who is under the influence of intoxicating liquor to drive any vehicle *within this state.*" Section RA-8-102 (emphasis added). This provision is clearly antagonistic with the jurisdictional limit placed on county ordinances found in NMSA 1978, § 4-37-2 (1975). ("County ordinances are effective within the boundaries of the county, including privately owned land or land owned by the United States. However, ordinances are not effective within the limits of any incorporated municipality.").

{19} While we will not engage in an evaluation of each and every provision of the Rio Arriba Traffic Ordinances to test for inconsistencies, it is likely that a further evaluation will reveal other individual conflicts with State law. Inconsistencies revealed by future examinations will not *immediately fail*, but based on the reasoning in *McCall*, must be tested to ensure that the county ordinance merely "complements" and is not "antagonistic" with State law. Where the Rio Arriba code does not complement the State law, the law of the sovereign must take precedent. *See Casuse*, 106 N.M. at 573, 746 P.2d at 1105.

{20} Having concluded that Rio Arriba has the authority to enact ordinances that are not inconsistent with State law, we now turn to the issue of the propriety of Rio Arriba's enforcement and disposition of funds collected in the enforcement of those ordinances.

## V.

{21} Rio Arriba properly sought enforcement of their county ordinances in the Española Magistrate Court. The magistrate courts are the courts of competent jurisdiction to hear violations of the county ordinances. NMSA 1978, § 35-3-4 (1985),

---

1. The three exceptions to Section 4-37-3 allow for the imposition of a greater penalty in the case of driving while under the influence and dumping of regular and toxic refuse. *See* § 4-37-3.

defines the criminal jurisdiction of the magistrate court as over "all cases of misdemeanors and petty misdemeanors, including offenses and complaints under ordinances of a county." In contrast, the municipal court has "jurisdiction over all offenses and complaints under ordinances *of the municipality.*" NMSA 1978, § 35–14–2 (1988) (emphasis added). Accordingly, the Española Magistrate Court is the proper forum for Rio Arriba to seek enforcement of its county ordinances.

{22} However, in addition to seeking enforcement of the traffic ordinances in the Española Magistrate Court, Rio Arriba sought to have the Española Magistrate direct payments received under their county ordinances to the Rio Arriba County Treasurer. The Rio Arriba Code reads, "Payment of any penalty assessment must be made by mail to the Rio Arriba County Treasurer within thirty days from the date of arrest." Section RA–8–117(B). As justification for the diversion of funds to their County Treasurer, Rio Arriba reasserts its argument that it has the same powers as municipalities. *See* § 4–37–1 (*See* infra Section III–A) Rio Arriba cites Section 66–8–130(B) for the proposition: "All penalty assessments under a municipal program authorized by this section shall be processed by the municipal court, and all fines and fees collected *shall be deposited in the treasury of the municipality.*" (Emphasis added). Rio Arriba argues that, like a municipality, as a county it can also retain the penalty assessments. *See* § 4–37–1.

{23} Rio Arriba's argument is unconvincing and fails to recognize the source of the enforcement power of the magistrate court. The magistrate court is not controlled by the local enactments of the County of Rio Arriba, but by the statutes governing the administration of the courts and the rules issued by the Supreme Court of the State of New Mexico. *See* NMSA 1978, § 35–7–1 (1997) ("The magistrate courts shall operate under the direction and control of the supreme court.").

{24} The magistrate courts are clearly and unambiguously directed to send all monies collected to the Administrative Office of the Courts. NMSA 1978, § 35–7–4 (1993) directs: "Each magistrate court shall pay to the Administrative Office of the Courts, not later than the date each month established by regulation of the director of the administrative office, the amount of all fines, forfeitures and costs collected by him during the previous month, except for amounts disbursed *in accordance with law.*" (Emphasis added.) The Administrative Office of the Courts is directed to "deposit the amount of all fines and forfeitures with the state treasurer for credit to the current school fund" and to "deposit the amount of all costs, except all costs collected pursuant to Subsections D and E of Section 35–6–1 NMSA 1978, for credit to the general fund." Section 35–7–4. There is no discretion given to the magistrate court to determine the collection or disbursement of funds.

{25} Rio Arriba argues that the language, "except for amounts disbursed in accordance with law" contained in Section 35–7–4 could be interpreted as allowing Rio Arriba to enact laws that can control the disbursement of the funds. This argument is not well taken. Counties of the State of New Mexico are political bodies vested with the power to pass local ordinances, but counties are not vested with the power to alter the funding and disbursement system of the State magistrate courts.

{26} We find support for our conclusion in the statutes governing the administration of the magistrate courts as well as in the New Mexico Constitution. New Mexico Constitution, Article VI, § 30 reads, "All fees collected by the judicial department shall be paid into the state treasury as may be provided by law and no justice, judge or magistrate of any court shall retain any fees as compensation or otherwise." While it is indisputable that this Section prevents the retention of fees as compensation by judges of the State of New Mexico, we believe that this amendment also expresses a clear intention that fees collected by the judicial department constitute state money.

{27} Rio Arriba argues that "fees" as described in N.M. Const. art. VI, § 30, are distinct from "penalties" as described in their

county code. We disagree. NMSA 1978, § 35–7–5(A) (1979), is sufficiently broad to answer any doubt that penalties are also public money for the purpose of Article VI, § 30. Section 35–7–5 provides: "All money collected by a magistrate court in connection with civil and criminal actions is *public money of the state* held in trust by the magistrate until received by the Administrative Office of the Courts or disbursed in accordance with law." (Emphasis added.) Furthermore, Section 35–7–4, describes the money collected as "all fines, forfeitures and costs." This language is also sufficiently broad to encompass penalty assessments.

{28} Finally, since the enforcement authority rests in the magistrate courts, we see no distinction between money mailed to the magistrate courts by individual violators and money collected at the court's facilities. Rio Arriba does not have the authority to direct the mail-in-payment of any funds to their county treasurer. All funds collected by the magistrate courts are indeed state funds and need to be processed as such, regardless of whether the violation is of a local county ordinance or of the State Motor Vehicle Code. Therefore, the collection and disbursement of funds from the magistrate courts shall remain as described in the New Mexico statutes regardless of whether they are processing a county citation or a state citation. Rio Arriba does not have the power to alter the organization of the magistrate court and therefore does not have the ability to retain any fees collected from the issuance of their local traffic ordinances absent express authorization by the Legislature.

## VI.

{29} Based on express provisions in the State Motor Vehicle Code governing local authorities, such as Rio Arriba, and the corresponding powers of counties and municipalities, we hold that Rio Arriba has the statutory authority to adopt local traffic ordinances that are not inconsistent with the laws of the State of New Mexico. We believe that the general grant of police power given to local authorities was designed to address particular local problems, and not to merely duplicate the statutes in the State Motor Vehicle

Code. However, New Mexico statutory authority dictates that despite having the power to enact the local traffic ordinance, Rio Arriba does not have the power to alter the administration of the magistrate courts. Rio Arriba does not have the power to retain any fees, forfeitures, costs, or penalties because this money is public money that has been directed by statute for payment to the Administrative Office of the Courts. This process was established at the State level and the enactment of the local ordinance has no effect on that administration. Rio Arriba is ordered to pay any funds it has retained in reliance on its local traffic ordinances to the Administrative Office of the Courts. We therefore overrule the portion of the district court ruling that held that Rio Arriba did not have the authority to enact the local ordinances. We affirm the portion of the district court ruling that held that Rio Arriba does not have the power to retain any penalty assessments collected in reliance on their local ordinances.

{30} **IT IS SO ORDERED.**

MINZNER, C.J., FRANCHINI, SERNA and MAES, JJ., concur.