Certiorari Granted, May 23, 2012, No. 33,589; Certiorari Granted, May 23, 2012, No. 33,594

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-056

Filing Date: March 28, 2012

Docket No. 30,172

PINGHUA ZHAO,

       Plaintiff-Appellant,

v.

KAREN L. MONTOYA,
BERNALILLO COUNTY ASSESSOR,

       Defendant-Appellee,

consolidated with

GREGG VANCE FALLICK
and JANET M. FALLICK,

       Plaintiffs-Appellants,

v.

KAREN L. MONTOYA,
BERNALILLO COUNTY ASSESSOR,

       Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Theresa Baca, District Judge**

Stephanie Dzur
Albuquerque, NM

Tax Estate & Business Law, Ltd.
Clinton W. Marrs

Albuquerque, NM

for Appellant Zhao

Sanders & Westbrook, P.C.
Duff Westbrook
Maureen Sanders
Albuquerque, NM

for Appellee

Greg Vance Fallick
Albuquerque, NM

Pro Se for Appellants Fallicks

**OPINION**

**KENNEDY, Judge.**

**{1}**     In this consolidated case, certified to us by the Bernalillo County District Court, Pinghua Zhao, Gregg Fallick, and Janet Fallick (Homeowners) appeal a significant increase in the value of their homes for property tax assessment as a result of a phenomenon commonly called "tax lightning." This phenomenon occurs when a home that has been owned by the same taxpayer for more than a year is sold to a new owner for a price representing a significant increase from its previously assessed value. The property is then reassessed for its "current and correct" taxable value which reflects the property's market value. NMSA 1978, § 7-36-15(B) (2008); 3.6.5.23(C) NMAC. This reassessment can result in a proportionately significant increase in the property's assessed value and, hence, the disparity between the former and the new homeowner's tax bill. *See* NMSA 1978, § 7-36-21.2 (2003) (amended 2010). Such was the case with Homeowners. Homeowners maintain that this increase in taxable value contravenes Article VIII, Section 1 of the New Mexico Constitution, which mandates that the Legislature limit annual increases in the assessed value of residential property and states that these limitations may be implemented according to certain "classes" of taxpayers, including a class based upon "owner-occupancy."

**{2}**     We disagree with Homeowners, holding that the Property Tax Code's different valuation methods under Section 7-36-21.2 for newly sold residential properties and those owned more than a year do not create a new class of taxpayer not specified by the New Mexico Constitution. Consequently, the County Assessor correctly operates within the parameters of the New Mexico Constitution and New Mexico statutes in resetting the value of residential property in the tax year following its sale at a current and correct market value.

**I.     BACKGROUND**

2

**{3}** The facts in the case are not in dispute. Homeowners bought and occupied new homes and, in the year following their purchase, Bernalillo County valued their properties at significantly greater amounts for tax assessment purposes than it had for the properties' previous owners. As a result, the property tax assessment for each home significantly increased. Homeowners appealed to the Bernalillo County Valuation Protests Board (Board), contending that the statute with which their properties were assessed was unconstitutional. The Board rejected the appeals and upheld the assessor's valuations. Homeowners then appealed to the district court, which, in light of what it believed to be a slew of similar cases, did not decide the case. Rather, the district court took judicial notice of two previous cases from the district with disparate results and certified the cases to this Court. *See* NMSA 1978, § 39-3-1.1(F) (1999); Rule 12-608 NMRA (setting forth the requirements and procedures for such certification to this Court). The question certified was

> [w]hether Subsections (A)(3)(a), Subsection (B), and Subsection (E) of . . . [Section] 7-36-21.2 . . . violate the New Mexico Constitution, Article VIII, [Section] 1 (as amended 1998), because the Subsections create a classification based on when residential property was acquired, not on the constitutionally permissible classifications of owner-occupancy, age, or income.

**{4}** Because this question is one of broad and substantial public interest and likely to recur, we conclude that the district court properly certified the question to us, and we accept the certification. *See Jicarilla Apache Nation v. Rio Arriba Cnty. Assessor*, 2004-NMCA-055, ¶ 13, 135 N.M. 630, 92 P.3d 642, *rev'd on other grounds by Jicarilla Apache Nation v. Rodarte*, 2004-NMSC-035, 136 N.M. 630, 103 P.3d 554.

## II.    DISCUSSION

**{5}** Enacted in 2000 and amended in 2001 and 2003, Section 7-36-21.2 is at issue in this case and provides in pertinent part:

> A.    Residential property shall be valued at its current and correct value in accordance with the provisions of the Property Tax Code . . . ; provided that for the 2001 and subsequent tax years, the value of a property in any tax year shall not exceed the higher of one hundred three percent of the value in the tax year prior to the tax year in which the property is being valued or one hundred six and one-tenth percent of the value in the tax year two years prior to the tax year in which the property is being valued. This limitation on increases in value does not apply to:
>
> . . . .
>
> > (3)    valuation of a residential property in any tax year in

3

which:

> (a)     a change of ownership of the property occurred in the year immediately prior to the tax year for which the value of the property for property taxation purposes is being determined[.]

> . . . .

> B.     If a change of ownership of residential property occurred in the year immediately prior to the tax year for which the value of the property for property taxation purposes is being determined, the value of the property shall be its current and correct value as determined pursuant to the general valuation provisions of the Property Tax Code.

> . . . .

> E.     As used in this section, "change of ownership" means a transfer to a transferee by a transferor of all or any part of the transferor's legal or equitable ownership interest in residential property except for a transfer[.]

{6}     The limitation on property value accorded by Section 7-36-21.2(A) is an exception to the general provisions of the Property Tax Code governing valuation of property for taxation purposes. *See* NMSA 1978, § 7-36-15(B) (1995) (amended 2008) (stating the general provisions for valuation of property); NMSA 1978, § 7-36-16(A) (2000) (noting the limitations on value imposed by Section 7-36-21.2 as an exception to the requirement that assessors regularly update the values of property for property taxation purposes to current and correct levels). Generally, all property is valued to reflect "current and correct" values, and current and correct values are updated and maintained regularly. *See* § 7-36-16; NMSA 1978, § 7-38-7 (1997). Section 7-36-21.2(A) creates an exception to that rule by limiting the increase in valuation to three percent a year after the residential property has changed ownership and been revalued according to "general valuation provisions of the Property Tax Code." Section 7-36-21.2(B). Section 7-36-21.2 limits increases in this manner, so long as the property is not transferred to a new owner. The applicability of this exception begins anew in the year following the purchase of a home by a new owner.

{7}     Homeowners argue that the limitation on taxation created by Section 7-36-21.2 violates Article VIII, Section 1 of the New Mexico Constitution by creating an unauthorized class of residential property taxpayers based upon the time of acquisition.[1]  Homeowners

---

[1]In this case, Homeowners have eschewed any argument that the Property Tax Code's distinction between residential properties owned more or less than a year implicates the equal protection clause of the United States and New Mexico Constitutions. *See*

also argue that Section 7-36-21.2 is invalid on its face. For reasons explained in this Opinion, we hold that Section 7-36-21.2 does not violate the New Mexico Constitution.

## A.  Standard of Review

**{8}** Because the facts in this matter are not in dispute, and the issue certified is solely one of statutory and constitutional interpretation, we review the question presented to us de novo. *Dell Catalog Sales L.P. v. Taxation & Revenue Dep't*, 2009-NMCA-001, ¶ 17, 145 N.M. 419, 199 P.3d 863. Likewise, we review de novo whether Section 7-36-21.2 conflicts with Article VIII, Section 1 of the New Mexico Constitution. *See Georgia O'Keeffe Museum v. Cnty. of Santa Fe*, 2003-NMCA-003, ¶ 27, 133 N.M. 297, 62 P.3d 754. "It is presumed that words appearing in [the C]onstitution have been used according to their plain, natural, and usual signification and import, and the courts are not at liberty to disregard the plain meaning of words of [the C]onstitution in order to search for some other conjectured intent." *State ex rel. Gomez v. Campbell*, 75 N.M. 86, 101, 400 P.2d 956, 966 (1965) (alteration omitted) (internal quotation marks and citation omitted).

**{9}** Similarly, "plain language of a statute is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). We "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent." *Id.* (internal quotation marks and citation omitted). We do not read additional language into the statute, particularly when it makes sense as the Legislature wrote it. *Id.*

**{10}** In our review, we indulge in a strong presumption that the statute in question is constitutional, and we will uphold a statutory enactment unless we are satisfied beyond all reasonable doubt of its unconstitutionality. *Bounds v. State*, 2011-NMCA-011, ¶ 34, 149 N.M. 484, 252 P.3d 708, *cert. granted sub nom. Bounds v. D'Antonio*, 2011-NMCERT-001, 150 N.M. 560, 263 P.3d 902. "[T]he party attacking the constitutionality of the statute has the burden of proving the statute is unconstitutional beyond all reasonable doubt." *Wachocki v. Bernalillo Cnty. Sheriff's Dep't*, 2010-NMCA-021, ¶ 33, 147 N.M. 720, 228 P.3d 504 (internal quotation marks and citation omitted), *aff'd*, 2011-NMSC-039, 150 N.M. 650, 265 P.3d 701. "It is . . . a fundamental principle that courts will not declare a legislative act unconstitutional if there is any reasonable basis upon which it can be upheld." *Amador v. State Bd. of Educ.*, 80 N.M. 336, 337, 455 P.2d 840, 841 (1969). And where we adjudicate an attack on a statute's constitutionality, "we look at whether there exists a set of circumstances in which the statute can be constitutionally applied." *Bounds*, 2011-NMCA-011, ¶ 34.

## B.  Section 7-36-21.2 Does Not Violate Article VIII, Section 1 of the New Mexico

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) (rejecting equal protection challenge to time-of-acquisition value system of valuing property for taxation as having rational basis).

**Constitution**

{11}    Homeowners contend that Section 7-36-21.2(A)(3)(a), (B), and (E) violate Article VIII, Section 1 of the New Mexico Constitution by creating an unauthorized class of residential property taxpayers based upon the time owners acquire the property.  Article VIII, Section 1 of the New Mexico Constitution is composed of two components, the latter of which mandates the Legislature to impose a limitation on annual increases in property valuation and states that the limitation may be applied to certain classes of taxpayers.  Homeowners concede that "[t]he dispositive issue is not whether [Section] 7-36-21.2 levies residential property taxes equally and uniformly within the *same* class of taxpayers; undoubtedly it does."  As a result, we will only discuss Article VIII, Section 1(B) of the New Mexico Constitution in our analysis.

{12}    Specifically, Homeowners contend that Section 7-36-21.2 "creates two classes of taxpayers—older and newer homeowners—defined solely on the basis of whether a homeowner changed ownership in the year immediately prior to the assessment year at issue, or in earlier years."  They argue that this classification violates Article VIII, Section 1(B) of the New Mexico Constitution, which states:  "The [L]egislature shall provide by law for the valuation of residential property for property taxation purposes in a manner that limits annual increases in valuation of residential property.  The limitation may be applied to classes of residential property taxpayers based on owner-occupancy, age[,] or income."  Homeowners interpret the second sentence of Section 1(B) to restrict the Legislature to the classifications of owner-occupancy, age, or income when creating statutes limiting annual taxable value increases.  Homeowners occupy the residences they own.  Because Homeowners believe that Section 7-36-21.2 classifies residential property owners based on when they acquired their property, they argue that the statute violates the Constitution as the classification is not one of the permissible classes provided in Article VIII, Section 1(B) of the New Mexico Constitution.

{13}    We disagree that a new classification of taxpayer is created based on the time of acquisition.  Section 7-36-21.2 applies the limitation to increases based upon when a taxpayer acquires ownership of the property and, hence, taxpayer status relative to that property.  An owner of residential property is "the person in whom is vested any title to property[.]"  NMSA 1978, § 7-35-2(G) (1994).  "Property taxes imposed are the personal obligation of the person owning the property on the date on which the property was subject to valuation for property taxation purposes."  NMSA 1978, § 7-38-47 (1973).  All property subject to taxation is valued as of January 1 of each tax year, Section 7-38-7, at its "current and correct value[]," Section 7-36-16(A).  The class of owner-occupants, contained in Article VIII, Section 1, does not include anyone until they own property.  What this means is the classification is based on the acquisition of taxpayer status.  The value limitation in question only commences once a taxpayer owns the property.

{14}    The limitation accrues to owners of property after the initial valuation of their home during their first year of ownership and limits increases in valuation thereafter to no more

6

than three percent of the prior year's value. *See* § 7-36-21.2(A). That exception to the general valuation statute conferred by Section 7-36-21.2(A) continues to benefit the homeowner every year until such time as the property is sold. Thus, Section 7-36-21.2 establishes a limitation predicated on the property being owned by the taxpayer, beginning anew with the current and correct value established by the market when the property was acquired by the new owner. *See* § 7-36-21.2(B). The limitation ceases with the end of the owner-occupant's tenancy after the sale of the property.

**{15}** To the extent Homeowners seem to assert that the value limitation carries over from the previous owner, such a contention is unsupported by the property tax code. After an owner sells his or her property, he or she is neither the taxpayer for property tax purposes, nor the owner-occupant of the home who benefits from the limited valuation conferred by Section 7-36-21.2. The purchaser, not owning the property on the date it was last subject to valuation pursuant to the limitation, is not entitled to benefit from that lower taxable value. The statute therefore does not classify newer owners and older owners in violation of the Constitution. Rather, the difference in taxable value between the former owner's tax bill and the new owner's tax bill is based upon the fact that the new owner, at the relevant date from which the limited taxable value was calculated for the former owner, was not an owner of the property.

**{16}** In this case, Homeowners were not owners of the properties when they were subject to the previous owners' entitlement to the value limitation. They consequently do not obtain the benefit of the limitations until their purchases of the properties are complete, at which time, they attain membership in the class of owner-occupants to whom the limitation applies.

**C.      Section 7-36-21.2 Is Not Invalid On Its Face**

**{17}** Homeowners also contend that Section 7-36-21.2 is invalid on its face. Homeowners fail to provide us with authority to evaluate this argument, other than assertions that "taxpayers['] homes lying side-by-side and receiving identical governmental services, were assessed using different valuation methods . . . and [the taxable value of these homes] increased at substantially disparate levels" and that the statute defines "change of ownership" in an arbitrary way. Homeowners do not provide authority about how we are to evaluate their claim that this law is "invalid on its face." We will not consider propositions that are unsupported by citation to authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969. And, where a party cites no authority to support an argument, we assume no such authority exists. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). This Court has no duty to review an argument that is not adequately developed. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (declining to entertain a cursory argument that relied on several factual assertions that were made without citation to the record).

**{18}** Homeowners urge that Article VII, Section 1(B) of the New Mexico Constitution permits the Legislature to favor owners who occupy their homes over residential property

owners who do not occupy or who rent out the property. This might be so, but authority cited by Homeowners as to this proposition directs us to restrict our reading of the constitutional provision to limit its scope to its own words and to neither add nor subtract language or concepts from it. Homeowners insist that "ownership must be linked to 'occupancy.'" First, we again note that Homeowners are "owner-occupants." What they want is to receive the benefit of the statutory limitation on value as neighbors who became owners before they did. As discussed above, this constitutionally based benefit is limited by the fact that Section 7-36-21.2 only allows the limitation of assessed valuation increases to someone who has become an owner, beginning at the moment ownership commences, and the property is valued so as to establish the new owner's obligation to pay taxes.

**{19}** To the extent Homeowners attempt to assert that revaluation at the time of a "change of ownership" in Section 7-36-21.2 operates to either create an impermissible temporal statutory exception to Article VIII, Section 1(B) of the New Mexico Constitution or creates a newly created class of taxpayers defined by the time of acquisition of their home who are excepted from this favorable scheme, their argument fails. This part of the statute is quite congruent with the constitutional class created in Article VIII, Section 1 of the New Mexico Constitution, and Homeowners are unequivocally members of that class of taxpayer as of the moment they purchased their homes. The argument that favoring older owners over newer owners is outside the constitutional classification is misplaced. The act of acquisition of residential property is what creates an ownership status with regard to that property, not its timing. Along with the acquisition of residential property goes the conferring of ownership and taxpayer status as to that property as we noted above. Thus, Homeowners were not members of the constitutionally protected class to whom a limitation of valuation would apply until their purchase of the property. The time of acquisition is the beginning terminus of that status, before which a person has no status at all. We hold that one cannot be an owner-occupant until after one purchases residential property and that begins the valuation process as of that date as provided under the general valuation methods of the Property Tax Code and thereafter limits increases in the value of the property for assessment purposes. It is not invalid on its face as to Homeowners.

**{20}** Homeowners' assertions that persons who are not "occupants" of residential properties are also included and mentioned in Section 7-36-21.2 cannot concern us, as nowhere in this case is it asserted that persons to whom those provisions apply are parties in this case. Homeowners' complaint that they are not treated the same as persons who became owner-occupiers at an earlier date than they did is the basis for our decision. The statute's application or non-application to owners of residential property who do not occupy their premises is a matter we leave to the Legislature to evaluate.

**{21}** Moreover, unless a statute violates the Constitution, "[w]e will not question the wisdom, policy, or justness of legislation enacted by our Legislature." *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 10, 122 N.M. 524, 928 P.2d 250. As we have addressed the specific constitutional claims raised by Homeowners and have determined that the statute does not violate those parts of the Constitution, we review this argument no further.

8

## III.   CONCLUSION

**{22}**   We hold that Section 7-36-21.2 does not violate the New Mexico Constitution, as it limits revaluation for taxation purposes based upon owner-occupant status.  Accordingly, we remand these cases to the district court for adjudication of Homeowners' claims consistent with the law as determined in this Opinion.

**{23}   IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**I CONCUR:**

_____
**CELIA FOY CASTILLO,  Chief Judge**

**SUTIN, Judge (specially concurring).**

**{24}**   I concur in the Majority Opinion.  I hesitate signing on with no separate statement only because I have concern about what I consider some imprecise, inaccurate, or ambiguous wording that might cause problems down the line, particularly with regard to the propriety of valuation procedure employed under Section 7-36-21.2.  I also hope it is clear that the Majority Opinion is to be narrowly read as limited to Homeowners' claim that the valuation under Section 7-36-21.2 violated Article VIII, Section 1(B) in that a new class of taxpayer not specified in Section 1(B) was created.

**{25}**   Thus, following the letter of the certified question, I concur in affirming the district court on the very limited ground that Subsections (A)(3)(a), (B), and (E) of Section 7-36-21.2 do not, as Homeowners contend, unconstitutionally go beyond owner-occupancy, age, and income by "creat[ing] a classification based on when residential property was acquired[.]"  I am not persuaded by Homeowners' "fourth taxpayer classification" theory.

**{26}**   Although not at issue in the appeal before us, I think it useful to write separately to raise questions in regard to the valuation procedure employed under Section 7-36-21.2.  The Majority Opinion analyzes the issue as follows.  The seller has the benefit of the 3% increase limitation until such time as he sells, at which time he no longer needs or deserves the benefit of that limitation.  The buyer gains the benefit of the 3% increase limitation until such time as he sells, at which time he, too, no longer needs or deserves the benefit of that limitation.  A new valuation (from which the 3% increase limitation starts) based on the sale price of the property is properly imposed on the property purchased.  The valuation based on the sale price reflects the current and correct value and thus the "market value" of the purchased property.  Exclusion of purchased property from a 3% annual increase based on

9

the last valuation of the property, and starting the 3% annual increase based on a new purchase price valuation, does not create an unconstitutional fourth taxpayer status classification, that is, a taxpayer classification in addition to the three allowed in Article VIII, Section 1(B), namely, "owner-occupancy, age[,] or income." The Majority Opinion properly does not delve into whether this valuation and ultimately the taxation process violates or is a permissible exception to the equal and uniform clause in Article VIII, Section 1(A) of the New Mexico Constitution.

{27}    Concern about the equality and uniformity of this purchase-price-valuation scheme is raised based on the following hypothetical example. Homeowners A and B live next door and live in virtually identical residences situated on the same amount of acreage. Their valuations in 2007 are $100,000. Homeowner A sells his home to Buyer C in 2007, a bubble housing economy, for $300,000. Buyer C's 3% limitation increase starts at $300,000. Homeowner B continues to have a 3% limitation increase based on $100,000. Homeowner B sells his property to Buyer D in 2012 for $125,000, the market having sunk dramatically. Buyer D, sitting next door to Buyer C, has the protective 3% limitation benefit on a $125,000 value; whereas Buyer C has that benefit on a $300,000 value. One can suppose that, in 2012, Buyer C can attempt to get a reduction of the 2012 assessed value, but one should not count on it. Buyer C would have to protest the valuation and prove a lower value by comparable sales. Comparable sales are likely to be a mixture of low and high prices, depending on market fluctuations over the period considered for comparable sales. The foregoing example can be extended to residential homes in a neighborhood or larger area consisting of like homes.

{28}    Article VIII, Section 1(B) gives no inkling of an intent that whatever annual increase limitation the Legislature might enact could carry the change-of-ownership exclusion enacted in Section 7-36-21.2(A). An issue may well remain open as to whether Article VIII, Section 1(A) can be construed as intending its equal and uniform mandate to permit the purchase-price-valuation process.

{29}    Section 1(A) deals with (1) value of classes of property and (2) methods of valuation of that property, with a percentage tax rate limitation. "[S]o long as the tax is equal and uniform on all subjects of a class and the classifications for taxation are reasonable, such legislation does not offend these provisions of the State or Federal [C]onstitutions." *Gruschus v. Bureau of Revenue*, 74 N.M. 775, 777, 399 P.2d 105, 106-07 (1965); *see* NMSA 1978, § 7-36-2.1(A) (1995) (stating that property is classified as residential and non-residential). What are we to understand from Article VIII, Section 1(A)'s "Except as provided in Subsection [(B)] of this section" preface? Are we to understand that Subsection 1(A) says that Subsection (B) controls even if  taxes are not equal and uniform upon residential property? Do we construe Subsection (B) to permit use of valuation methods resulting in taxes upon residential property that are not equal and uniform? Did the Legislature intend such broad constitutional authority in order to enhance its own plenary authority in taxation? Were the people who approved the amendment sufficiently advised of the breadth of such authority, and did they understand what it could bring about?

10

**{30}** Article VIII, Section 1(B) requires the Legislature to provide by law for the valuation of residential property for property taxation purposes "in a manner that limits annual increases in valuation of residential property." Subsection (B) then states that the annual increase limitation "may be applied to classes of residential property taxpayers based on owner-occupancy, age[,] or income." Article VIII, Section 1(A)'s equal and uniform clause relates to subjects of taxation of the same class. Property is the subject of taxation. Residential property is a subject of taxation of the same class. Article VIII, Section 1(B)'s mandate to limit increases relates to valuation of residential property.

**{31}** Section 7-36-21.2 is the Legislature's apparent attempt to come within the constitutional mandates of Article VIII, Sections 1(A) and 1(B). In that apparent attempt to come within the constitutional mandates, the Legislature created not only the 3% "manner" of annual valuation increase in Section 7-36-21.2(A), but at the same time created in Section 7-36-21.2(B) what appears to call for a re-valuation of the property purchased at the point of ownership change. That is how the valuation authorities have construed Section 7-36-21.2(B). Under Section 7-36-21.2(B), the valuation of the new purchaser's property must be the "current and correct value as determined pursuant to the general valuation provisions of the Property Tax Code."

**{32}** Section 7-36-15(B) of the Property Tax Code sets out the methods of valuation for property taxation purposes for residential and other property not covered under other specific statutory provisions. Market value is to be "determined by application of the sales of comparable property, income or cost methods of valuation[,] or any combination of these methods." *Id.* And the valuation authority must "apply generally accepted appraisal techniques[.]" Section 7-36-15(B)(1). Yet, when a residential property is sold, the valuation authorities are employing a valuation method that determines value based solely on the purchase price of the property.[2]

**{33}** This purchase-price method of valuation is not a valuation method based on comparable sales, although comparable sales appears to be the primary if not only method of valuation contained in the Property Tax Code for valuation of purely residential property. *See* § 7-36-15(B). Furthermore, it is not readily apparent that using the purchase price of the property being valued as the sole valuation determinant is a generally accepted appraisal technique. In addition, according to Property Tax Department Regulation 3.6.5.22(G)(6) NMAC, "[e]vidence of the sale price of the property being valued is not sufficient to establish a market value under Section 7-36-15 . . . if the evidence of the sales of comparable property indicates the sales price was not the market value." Also, Department Regulation 3.6.5.23(C)(1) and (2) NMAC define "current and correct values of property" in terms of market value, and "market value" is determined based on the market value method of

---

[2]The valuation authorities refer to this methodology for determining property value as an "acquisition value system." *See Dzur v. Bernalillo Cnty. Protests Bd.*, No. CV-2008-12410, ¶ 23 (2d Jud. Dist. Ct.).

valuation set out in 3.6.5.22(G)(1) NMAC as "a process of analyzing sales of similar recently sold properties in order to derive an indication of the most probable sales price of the property being appraised." Nothing in Article VIII, Section 1 indicates an intent that what should be an equal and uniform annual increase limitation gives rise to use of purchase price as the exclusive method of re-valuing a particular residential property that happens to be sold, where all similar properties remain undervalued.

{34}   In the attempt to construe Article VIII, Sections 1(A) and 1(B)  and Section 7-36-21.2 in tandem and harmony, one must at least question whether the Constitution permits the Legislature to enact legislation that results in apparent non-uniform and unequal valuation and taxation of properties of the same class. Were Plaintiffs to have raised whether the manner in which valuation authorities have applied Section 7-36-21.2 violates the equal and uniform clause or constitutional equal protection, it is not all that clear that *Nordlinger*, 505 U.S. 1, would control rather than *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, 488 U.S. 336 (1989).

{35}   It would at least seem arguable that Section 7-36-21.2 violates Article VIII, Section 1. The argument would be that, as the statute reads, as well as in the manner in which it has been interpreted and applied by the valuation authorities, Section 7-36-21.2 goes beyond simply providing for valuation in a manner that uniformly limits annual increases in valuation of residential property during valuation cycles. This view may very well have been how the electorate saw the benefit of constitutional amendment when they voted in favor of its adoption. It would seem arguable that Section 7-36-21.2 has created an impermissible offspring through application of a method of valuation that results in what amounts to unequal and non-uniform checkerboard and patchwork valuation and taxation of the same class of property. The argument would be based on singling out one property for a currently higher valuation while leaving all unsold similar, comparable properties in perhaps lesser or under market value status. We have no evidence here of public benefit from long-term home ownership or even of a weighing of any such benefit against any detrimental effect resulting from discouragement and disincentive with regard to alienation of property when purchase of a new property is contemplated. How persuasive these arguments might be must be left for any future proceedings that may arise. Plaintiffs did not raise and argue any of this.

{36}   As I indicated earlier, what I have discussed here does not specifically reside within the letter of the limited question certified to this Court. But nothing I have discussed should, if legitimately arguable, be considered precluded by anything written in the Majority Opinion from contention and argument in any other pending or future case.

_____
JONATHAN B. SUTIN, Judge

**Topic Index for *Zhao, v. Montoya*, Docket No. 30,172**

**AE**          **APPEAL & ERROR**
AE-CT        Certification

**CP**          **CIVIL PROCEDURE**
CP-CF        Certification

**CT**          **CONSTITUTIONAL LAW**
CT-NM       New Mexico Constitution, General

**ST**          **STATUTES**
ST-CN        Constitutionality
ST-IP         Interpretation
ST-LI         Legislative Intent

**TX**          **TAXATION**
TX-PT        Property Tax
TX-SA       Special Assessments