IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2014-NMSC-025

Filing Date:  June 30, 2014

Docket No. 33,589

PINGHUA ZHAO,

       Plaintiff-Petitioner,

v.

KAREN L. MONTOYA,
Bernalillo County Assessor,

       Defendant-Respondent.

and

Docket No. 33,594

GREGG VANCE FALLICK and
JANET M. FALLICK,

       Plaintiffs-Petitioners,

v.

KAREN L. MONTOYA,
Bernalillo County Assessor,

       Defendant-Respondent.

ORIGINAL PROCEEDINGS ON CERTIORARI
Theresa M. Baca, District Judge

Stephanie L. Dzur
Albuquerque, NM

Tax, Estate & Business Law, Ltd.
Clinton W. Marrs
Albuquerque, NM

1

for Petitioner Pinghua Zhao

Davis, Gilchrist & Lee, P.C.
Christopher David Lee
Albuquerque, NM

Ross & Garrett
Michael C. Ross
Aaron Garrett
Albuquerque, NM

for Petitioners Gregg Vance Fallick and Janet M. Fallick

Sanders & Westbrook, P.C.
Duff H. Westbrook
Albuquerque, NM

for Respondent

## OPINION

**MAES, Justice.**

**{1}** In these consolidated cases, Pinghua Zhao, Gregg Fallick, and Janet Fallick (Homeowners) appeal the valuation of their residences for property tax purposes as a result of what they allege is "tax lightning," also known as acquisition-value taxation. Under acquisition-value taxation, a real estate owner's property tax liability is determined by the value of the property when acquired, not by the traditional practice of taxing real property on its current fair market value. In periods of rising real estate prices such a system compels later buyers to shoulder a higher annual tax liability than previous buyers. Consequently, there can be disparities in the tax liabilities of taxpayers owning similar properties. Homeowners challenge the constitutionality of NMSA 1978, Section 7-36-21.2(A)(3)(a), (B), and (E) (2003, amended 2010) of the Property Tax Code for creating an unauthorized class of residential property taxpayers based solely upon time of acquisition and for violating the equal and uniform clause of Article VIII, Section 1 of the New Mexico Constitution.

**{2}** We hold that Section 7-36-21.2 (2003) creates an authorized class based on the nature of the property and not the taxpayer. We also hold that the New Mexico tax system does not violate the equal and uniform clause of the New Mexico Constitution because it furthers a legitimate state interest. We further hold that the Court of Appeals erred in its interpretation of "owner-occupant." Therefore, we affirm in part and reverse in part the Court of Appeals.

## I.    FACTS AND PROCEDURAL HISTORY

**Zhao's Procedural History**

**{3}**    In 2007, Pinghua Zhao (Zhao) purchased residential property in Bernalillo County. At the time of purchase the property was assessed and valued at $243,786. In 2008, the property was valued at $362,600, an increase of 49 percent in one year. Zhao appealed the 2008 assessment to the Bernalillo County Valuation Protests Board (Board), asserting that the correct valuation should have been $251,100, a 3 percent increase in value based on the amount set in the preceding year. Zhao asserted that he was entitled to the 3 percent limitation on increases in valuation that applied to other properties in the area that had not changed ownership in 2007. Zhao asserted that the Legislature could only classify residential property taxpayers based on the three categories listed in Article VIII, Section 1(B) of the New Mexico Constitution, i.e., owner-occupancy, age, or income, and could not classify residential taxpayers based on change of ownership.

**{4}**    The Board upheld the Bernalillo County Assessor's valuation of Zhao's property, explaining that the "assessed value of the subject property was increased by more than the 3% limitation of Section 7-36-21.2 because the property owners purchased the subject property during the 2007 tax year, and thus its value was raised to the market value as of January 1, 2008." Zhao appealed the Board's decision to the Second Judicial District Court.

**Fallicks' Procedural History**

**{5}**    Like Zhao, Janet and Gregg Fallick (Fallicks) own property in Bernalillo County. The Fallicks purchased a home "around the corner" from Mr. Fallick's prior home. The sale and purchase were simultaneous. The 2009 valuation for property tax purposes on the new home was $902,500, compared to $553,700 for Mr. Fallick's prior home. The Fallicks appealed the valuation of their home to the Board. Based on comparable properties in their neighborhood and certain permissible statutory increases, the Fallicks submitted that their property should be assessed at $599,169. The County based its assessment on the market value of the home for the year 2009. The Fallicks asserted that the County's assessment practices amounted to tax lightning and violated the equal and uniform clause of Article VIII, Section 1 of the New Mexico Constitution. The Board upheld the valuation, finding that the Fallicks failed to meet their "burden of rebutting the presumption that the assessor's valuation is correct." The Fallicks appealed the Board's determination to the Second Judicial District Court.

**{6}**    The district court consolidated Homeowners' cases and certified the following question to the Court of Appeals pursuant to NMSA 1978, Section 39-3-1.1(F) (1999) (permitting the district court to certify an issue without making a decision): Whether NMSA 1978, Section 7-36-21.2 (A)(3)(a), (B), and (E) (2003) violates Article VIII, Section 1 (as amended 1998) of the New Mexico Constitution "because the Subsections create a classification based on when residential property was acquired, not on the constitutionally permissible classifications of owner-occupancy, age, or income."

**{7}** The Court of Appeals upheld the statute's exclusion of the class of properties that had changed ownership in the prior year from the 3 percent limitation as a constitutionally permissible classification based on owner-occupancy. *Zhao v. Montoya*, 2012-NMCA-056, ¶ 22, 280 P.3d 918. The Court reasoned that one is not entitled to the limitation until acquiring ownership of the property, at which point one enters the class of owner-occupants. *Id*. ¶19.

**{8}** Judge Sutin concurred with the majority "on the very limited ground that Subsections (A)(3)(a), (B), and (E) of Section 7-36-21.2 do not, as Homeowners contend, unconstitutionally go beyond owner-occupancy, age, and income by 'creat[ing] a classification based on when residential property was acquired[.]'" *Zhao*, 2012-NMCA-056, ¶ 25 (Sutin, J., specially concurring) (alteration in original). Judge Sutin's concurrence did note concern that the application of Section 7-36-21.2 might violate Article VIII, Section 1's equal and uniform requirement by creating a method of valuation that results in unequal and non-uniform valuation and taxation of the same class of property. *Zhao*, 2012-NMCA-056, ¶¶ 34-35 (Sutin, J., specially concurring). However, the majority concluded that Homeowners had abandoned their reliance on the equal and uniform clause because they conceded that Section 7-36-21.2 "levies residential property taxes equally and uniformly within the *same* class of taxpayers." *Id*. ¶ 11.

**{9}** Homeowners separately appealed to this Court pursuant to Rule 12-502 NMRA. Zhao raised three issues for review: (1) Whether the Court of Appeals erred in interpreting the New Mexico Constitution Article VIII, Section 1(B) as permitting classification of taxpayers based upon a change of ownership; (2) whether the Court of Appeals erred in holding that Section 7-36-21.2 (B) is a classification based upon owner-occupancy; and (3) whether the Court of Appeals erred in holding that Zhao is not within a protected class entitled to a valuation limitation. The Fallicks raised the sole issue of whether the Court of Appeals erred when it held that Subsection (A)(3)(a), Subsection (B), and Subsection (E) of NMSA 1978, Section 7-36-21.2 (2003), does not violate the equal and uniform clause of the New Mexico Constitution. We granted certiorari and consolidated the appeals.

**{10}** We first address two of Zhao's arguments, which can be summarized as follows: Did the Legislature impermissibly create a class of taxpayer based on time of acquisition? Next we address the Fallicks' argument that New Mexico's tax scheme violates the equal and uniform clause of the New Mexico Constitution. Finally, we consider whether the Court of Appeals erred in holding that Zhao is not an owner-occupant entitled to a valuation limitation.

## II.    STANDARD OF REVIEW

**{11}** Questions of statutory and constitutional interpretation are reviewed de novo. *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2012-NMSC-039, ¶ 11, 289 P.3d 1232. Legislative acts are presumed to be constitutional. *See Garcia v. Village of Tijeras*, 1988-NMCA-090, ¶ 6, 108 N.M. 116, 767 P.2d 355. The party contesting the

4

constitutionality of a statute bears the burden of proving the statute is, in fact, unconstitutional. *See id*.

## III.    DISCUSSION

**{12}**    The Legislature's authority to tax personal property is found in Article VIII, Section 1 of the New Mexico Constitution. Before 1998, Article VIII, Section 1 of the New Mexico Constitution included only what is now Subsection (A). Subsection (A) demanded that "taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class." N.M. Const. art. VIII, Section 1(A) (1971). Then in 1998, Subsection (B) was added:

> The legislature shall provide by law for the valuation of residential property for property taxation purposes in a manner that limits annual increases in valuation of residential property. The limitation may be applied to classes of residential property taxpayers based on owner-occupancy, age or income. The limitations may be authorized statewide or at the option of a local jurisdiction and may include conditions under which the limitation is applied. Any valuation limitations authorized as a local jurisdiction option shall provide for applying statewide or multi-jurisdictional property tax rates to the value of the property as if the valuation increase limitation did not apply.

N.M. Const. art. VIII, §1(B)(1998).

**{13}**    In response, the Legislature enacted Section 7-36-21.2 in 2000 and then amended it in 2001 and 2003, which states in pertinent part:

> A. Residential property shall be valued at its current and correct value in accordance with the provisions of the Property Tax Code . . . ; provided that for the 2001 and subsequent tax years, the value of a property in any tax year shall not exceed the higher of one hundred three percent of the value in the tax year prior to the tax year in which the property is being valued or one hundred six and one-tenth percent of the value in the tax year two years prior to the tax year in which the property is being valued. This limitation on increases in value does not apply to:
>
> . . . .
>
> (3) valuation of a residential property in any tax year in which:
>
> (a) a change of ownership of the property occurred in the year immediately prior to the tax year for which the value of the property for property taxation purposes is being determined.

5

. . . .

B. If a change of ownership of residential property occurred in the year immediately prior to the tax year for which the value of the property for property taxation purposes is being determined, the value of the property shall be its current and correct value as determined pursuant to the general valuation provisions of the Property Tax Code.

. . . .

E. As used in this section, "change of ownership" means a transfer to a transferee by a transferor of all or any part of the transferor's legal or equitable ownership interest in residential property except for [certain] transfer[s].

Section 7-36-21.2 (A)(3)(a), (B), (E).

{14}    The Legislature's inherent authority and discretion to exercise the State's power of taxation is plenary "except in so far as limited by the Constitution." *Edmunds v. Bureau of Revenue of N.M.*, 1958-NMSC-112, ¶ 15, 64 N.M. 454, 330 P.2d 131 (internal quotation marks and citation omitted); *see also Flynn, Welch & Yates v. State Tax Comm'n*, 1934-NMSC-001, ¶ 18, 38 N.M. 131, 28 P.2d 889 ("'The power of taxation is inherent in the state, and may generally be exercised through its Legislature without let or hindrance, except in so far as limited by the Constitution.'" (citation omitted)). Thus, the Legislature has broad taxing authority and may enact any law regarding taxation that is not expressly or inferentially prohibited by the Constitution. *See Albuquerque Metro. Arroyo Flood Control Auth. v. Swinburne*, 1964-NMSC-206, ¶ 19, 74 N.M. 487, 394 P.2d 998.

A.    **Section 7-36-21.2(A)(3)(a) does not create an unauthorized class of residential property taxpayer, but rather draws a distinction based on the nature of the property**

{15}    Zhao argues that the plain language of Subsection (B) limits annual increases in valuation of residential property to classes of residential property taxpayers based on three, and only three, specified attributes: owner-occupancy, age, or income. Zhao asserts that with the adoption of Section 7-36-21.2, which reassesses property at its "current and correct value" when a "change of ownership" occurs, the Legislature established an acquisition value system, or tax lightning scheme, for residential property taxation in New Mexico. Therefore, Zhao contends that Section 7-36-21.2 violates the express requirements of Subsection (B) by creating an unauthorized fourth class of taxpayers based on time of acquisition.

{16}    The State answers that the Legislature did not create a new class of taxpayers; it created a subclass of residential properties based on the time of acquisition. The State argues that the classification does not depend on the identity of the taxpayer; classification attaches

6

to the property. The State further asserts that the Legislature has inherent and plenary authority to enact legislation governing taxation. Thus, it may in its discretion impose different limitations on different subclasses of residential properties.

**{17}**  Zhao replies that the Legislature does not have plenary authority to ignore the Constitution and that the State's argument fails to get around the plain language of Section 7-36-21.2. Zhao asserts that any way the statute is read, "change of ownership" is not based on a distinction between residential properties but on a distinction between residential property taxpayers.

**{18}**  The party challenging the constitutionality of a statute bears a heavy burden of persuasion. *Madrid v. St. Joseph Hosp.*, 1996-NMSC-064, ¶ 10, 122 N.M. 524, 928 P.2d 250 ("Absent proof beyond a reasonable doubt that the Legislature has enacted a statute which is unconstitutional, this Court will uphold the statute."). A court's primary goal when construing a statute is to give effect to the intent of the Legislature. *Diamond v. Diamond*, 2012-NMSC-022, ¶ 25, 283 P.3d 260. In assessing Legislative intent, the reviewing court looks "first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.*

**{19}**  "In the field of taxation, more than in other fields, the legislature possesses the greatest freedom in classification . . . ." *Michael J. Maloof & Co. v. Bureau of Revenue*, 1969-NMSC-100, ¶ 7, 80 N.M. 485, 458 P.2d 89. Therefore, "'every presumption is to be indulged in favor of the validity and regularity of legislative enactments.'" *State v. Smith*, 2004-NMSC-032, ¶ 23, 136 N.M. 372, 98 P.3d 1022 (citation omitted).

**{20}**  Before the 1998 amendment the Legislature could not have enacted a residential property valuation limitation cap because Subsection (A) required that taxes be levied in proportion to assessed value. When Subsection (B) of the Constitution was added it gave the Legislature the authority to deviate from Subsection (A). The first sentence of Subsection (B) provides that the "legislature shall provide by law for the valuation of *residential property* for property taxation purposes in a manner that limits annual increases in valuation of *residential property*." N.M. Const. art. VIII, §1(B) (emphasis added). The second sentence states that "[t]he limitation may be applied to classes of residential property *taxpayers* based on owner-occupancy, age or income." *Id.* (emphasis added).

**{21}**  By arguing that the Legislature impermissibly created another class of taxpayer characteristics, Zhao conflates two concepts: the class of property, as defined by its characteristics, and the classes of taxpayers that own property within that class. The text of the Constitution itself acknowledges that these concepts are distinct. First, we note that Subsection (A) refers to a "class" of "property," not "taxpayers." N.M. Const. art. VIII, Section 1(A) ("[T]axes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of the same class."). Similarly, the first sentence of Subsection (B) does not refer to taxpayers or property owners, but instead refers only to property. It is only the second sentence of Subsection (B) that mentions

7

classes of taxpayers.

**{22}** The class of property at issue in this case is clearly residential, as that is what is specifically addressed in Subsection (B). Residential property has characteristics upon which the Legislature may legitimately create taxing legislation. Ownership is the fundamental characteristic that defines the nature of property. *See e.g.*, Black's Law Dictionary (9th ed. 2009) (defining property as "the right of ownership"); *Muckleroy v. Muckleroy*, 1972-NMSC-051, ¶ 5, 84 N.M. 14, 498 P.2d 1357 ("Broadly defined, property includes every interest a person may have in a thing that can be the subject of ownership, including the right to enjoy, use, freely possess and transfer that interest."). Without an ownership interest to define it, property only exists as an amorphous concept. Improvements are another characteristic of property itself—whether the real property is bare land or has been improved bears directly on how it is valued for tax purposes. *See* §7-36-21.2(A)(2) ("This limitation on increases in value does not apply to . . . any physical improvements, except for solar energy system installations, made to the property during the year immediately prior to the tax year or omitted in a prior tax year . . . ."). Further, the use for which the property is zoned is a characteristic that is distinct to the property itself. *See* Section 7-36-21.2(A)(3)(b) ("This limitation on increases in value does not apply to . . . valuation of a residential property in any tax year in which . . . the use or zoning of the property has changed in the year prior to the tax year.").

**{23}** By contrast, there are characteristics that are distinct to residential property taxpayers themselves. Subsection (B) lists the characteristics upon which the valuation limitation may be based: owner-occupancy, age, or income. Zhao argues that the Legislature has created a new and constitutionally impermissible taxpayer characteristic in the acquisition-value scheme: sellers versus purchasers, or old owners versus new owners. We disagree with this assertion. The Legislature has created a valuation scheme for residential property, a single class of property, based on the acquisition of an ownership interest in such property. Acquisition of an ownership interest in residential property, which is the ultimate characteristic of the property itself, establishes the Legislature's authority to tax. This is distinct from any individual taxpayer characteristic.

**{24}** Having been given the constitutional power to impose a valuation cap on residential properties, we do not read anything in the Constitution that requires the Legislature to impose limitations based solely on a taxpayer's characteristics. Subsection (B) does not state that the cap must be given in all cases and in the same manner to everyone. More importantly, nothing in the language of Subsection (B) divests the Legislature of its authority to exercise its inherent, plenary power to make classifications based on the property. And, as the second sentence provides, if the Legislature chooses in its discretion to impose valuation limitations based on who the taxpayer is, rather than on a classification of residential properties, it may only do so on the basis of the three enumerated taxpayer characteristics: age, income, or owner-occupant status. Therefore, the language of Subsection (B) is both permissive and restrictive.

**{25}** Zhao's argument that Subsection (B) authorizes the Legislature to enact only certain limitations on the valuation of residential properties ignores the Legislature's inherent, plenary authority to exercise the State's power of taxation "except in so far as limited by the Constitution." *Edmunds*, 1958-NMSC-112, ¶ 15 (internal quotation marks and citation omitted). As we have indicated, the Legislature has broad taxing authority. Included is the authority to draw lines which would include the power to impose the cap but with certain conditions.

**{26}** Moreover, when read in conjunction with other statutes dealing with the property tax valuation, we are convinced that the Legislature classified on the basis of the property, not the taxpayer. As provided above, Sections 7-36-21.2(A)(3)(b) and (B) only refer to the nature of the property and not the taxpayer. Correspondingly, Section 7-36-21.2(E) (3), (5), and (6), which defines "change of ownership," rests upon the characterization of the property:

> [A] transfer to a transferee by a transferor of all or any part of the transferor's legal or equitable ownership interest in residential property except for a transfer:
>
> > . . . .
>
> > (3) that creates, transfers or terminates, solely between spouses, any co-owner's interest;
>
> > . . . .
>
> > (5) that confirms or corrects a previous transfer made by a document that was recorded in the real estate records of the county in which the real property is located;
>
> > (6) for the purpose of quieting the title to real property or resolving a disputed location of a real property boundary.

**{27}** Other sections of the Property Tax Code also make it clear that the Legislature was aware of the distinction between property and property owners. For example, NMSA 1978, Section 7-36-21.3 (2013), provides for different valuation limitations for properties owned and occupied by low income and elderly individuals. The statute expressly refers to "a single-family dwelling owned and occupied by a *person* who is sixty-five years of age or older and whose modified gross income . . . for the prior taxable year did not exceed the greater of eighteen thousand dollars." Section 7-36-21.3(A) (emphasis added) (citation omitted). Similarly, other sections allow exemptions for properties owned and occupied by qualified individuals such as heads of family and disabled veterans. *See* NMSA 1978, Section 7-37-4 (1993); NMSA 1978, Section 7-37-5.1 (2004).

9

**{28}** Article VIII of the New Mexico Constitution does not grant the Legislature limited authority to impose limitations in valuation increases only on the basis of three taxpayer characteristics. Instead, it limits the Legislature's existing plenary authority to impose valuation limitations based on taxpayer characteristics to the three enumerated characteristics of age, income, and owner-occupancy. Article VIII does not, however, impose any restrictions on the Legislature's authority to impose limitations in valuation increases based on its classification of residential properties. Further, Section 7-36-21.2(A)(3)(a) does not create an "unauthorized class of residential property taxpayers" as Zhao suggests, but rather draws a distinction based on the nature of the property and not the taxpayer.

**{29}** We recognize that tax laws are complex creations with inherently political aspects and, therefore, the Legislature enjoys broad discretion in formulating tax policies and in supporting the classifications made. Considering the presumption of validity of legislative enactments, the Legislature's plenary authority to make tax classifications, the absence of an express limitation in the New Mexico Constitution, and the distinction between property owner and property found in other sections of the Property Code, we hold that the Legislature did not create an unauthorized class of taxpayers.

**B.** **New Mexico's property tax system does not violate the equal and uniform clause of the New Mexico Constitution because it furthers legitimate state interests**

**{30}** The equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution states that "[e]xcept as provided in Subsection B of this section, taxes levied upon tangible property shall be in proportion to the value thereof, and taxes shall be equal and uniform upon subjects of taxation of the same class." The Fallicks argue that New Mexico's tax system violates the equal and uniform provisions of the Constitution and assert that Judge Sutin's concurrence makes it clear that the valuation procedure of Section 7-36-21.2 carves out unequal treatment for property that has recently been sold, and that such inequalities are exasperated when housing markets fluctuate. The Fallicks further contend that Section 7-36-21.2 violates the equal protection clause of the Fourteenth Amendment of the United States Constitution.

**{31}** The State argues that the Fallick's argument should be rejected for two reasons. First, the State asserts that Homeowners abandoned this issue during oral argument in front of the Court of Appeals when Zhao stated that Homeowners were not arguing that Section 7-36-21.2 violated the equal protection clauses of the New Mexico and United States Constitutions. *See Zhao*, 2012-NMCA-056, ¶ 7 n.1 (stating that "Homeowners have eschewed any argument that the Property Tax Code's distinction between residential properties . . . implicates the equal protection clause of the United States and New Mexico Constitutions"). Second, the State contends that Section 7-36-21.2 does not violate the equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution because neighborhood preservation and the protection of older homeowners' reliance interests satisfies rational basis for the Legislature's classification of residential properties.

**{32}** Although the majority opinion from the Court of Appeals did not address this issue, Judge Sutin in his concurrence did note that there may be a question regarding whether Section 7-36-21.2 satisfies the equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution. *Zhao*, 2012-NMCA-056, ¶ 26 (Sutin, J., specially concurring).

**{33}** This Court granted review of the broad issue regarding whether Section 7-36-21.2 violates Article VIII, Section 1 of the New Mexico Constitution, which inherently includes the narrower issue regarding whether Section 7-36-21.2 violates the equal and uniform clause. Therefore, the issue regarding whether Section 7-36-21.2 violates the equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution is properly before this Court.

**{34}** When considering whether a legislative tax classification violates the equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution, we employ the same test used to determine whether the classification violates the equal protection clause of the Fourteenth Amendment. *Anaconda Co. v. Property Tax Dep't.*, 1979-NMCA-158, ¶ 22, 94 N.M. 202, 608 P.2d 514 ("[T]he tests in New Mexico for violation [of Article VIII, Section 1 of the New Mexico Constitution] are the same as those used in determining a violation of the equal protection clause . . . ."). We therefore apply a rational basis review for the taxation classification at issue in this case. *See Welch v. Sandoval Cnty. Valuation Protest Bd.*, 1997-NMCA-086, ¶ 12, 123 N.M. 722, 945 P.2d 452 ("A classification under the tax laws satisfies the constitutional requirements if there is a rational basis for the classification.").

**{35}** Whether a statute violates the equal and uniform clause of Article VIII, Section 1(A) of the New Mexico Constitution requires a court to determine whether 1) there is a rational basis for the classification, 2) there is a substantial difference between the legislatively drawn categories, and 3) the classification for taxation is reasonable, and 4) the tax is uniform and equal on all subjects of a class. *See Anaconda*, 1979-NMCA-158, ¶ 23. In *Ernest W. Hahn, Inc. v. Cnty. Assessor*, 1978-NMSC-094, ¶ 15, 92 N.M. 609, 592 P.2d 965, this Court explained that in order to support a claim under the equal and uniform clause of the New Mexico Constitution, the "taxpayer must show that the inequality is substantial and amounts to an intentional violation of 'the essential principle of practicality and uniformity.'" (citation omitted). This Court went on to explain that "a uniform method of taxation requires that each reappraisal be part of a systematic and definite plan which provides that all similar properties be valued in a like manner." *Id.* ¶ 16.

**{36}** Since *Anaconda* was decided, the United States Supreme Court issued two opinions addressing tax discrimination issues: *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty, West Virginia*, 488 U.S. 336 (1989) and *Nordlinger v. Hahn*, 505 U.S. 1 (1992).

**{37}** In *Allegheny* the United States Supreme Court unanimously held that the assessment scheme employed by a county assessor in Webster County, West Virginia, violated the Equal

Protection Clause of the U.S. Constitution. 488 U.S. at 346. The assessor had established a practice of assessing coal mining property according to its recent acquisition cost and only making minor adjustments to the old selling price of property that had not recently changed hands. *Id*. at 338. The Webster County assessor had established a de facto acquisition-value assessment scheme, which resulted in great disparities in the taxation of comparable properties. *Id*. at 345-346. The Court held that equal protection requires "the seasonable attainment of a rough equality in tax treatment of similarly situated property owners." *Id*. at 343. The Court found that the assessor's periodic adjustments to property, which had not been recently conveyed, were "too small to seasonably dissipate the remaining disparity." *Id*. at 344.

**{38}** Furthermore, the West Virginia "Constitution and laws provide that all property of the kind held by the petitioners . . . be taxed at a rate uniform throughout the State according to its estimated market value." *Id*. at 345. The Court found that the intentional "systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property." *Id*. (internal quotation marks and citation omitted).

**{39}** In *Nordlinger*, the United States Supreme Court considered whether California's Proposition 13, which restricted the taxation and assessment rates of real property, violated the Equal Protection Clause of the Fourteenth Amendment. 505 U.S. at 4. Proposition 13, which is now codified in the California Constitution as Article XIIIA, placed a cap on real property taxes at 1 percent of the property's "full cash value." "Full cash value was defined as the assessed valuation as of the 1975-1976 tax year or, 'thereafter, the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred . . . .'" *Id*. at 5. The provision also imposed a 2 percent cap on annual increases of assessed valuations. *Id*. Thus, through its constitutional amendment, California approved and codified an acquisition-value system of property taxation.

**{40}** In holding that California's taxation system did not violate equal protection, the Supreme Court applied a rational basis review. *Id*. at 11. The Court determined that the "appropriate standard of review is whether the difference in treatment between newer and older owners rationally furthers a legitimate state interest." *Id*. Generally, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification." *Id*. By an eight-to-one vote, the Court concluded that California's acquisition-value system satisfied rational basis and thus did not violate the Equal Protection Clause. *Id*. at 18.

**{41}** The Court had "no difficulty in ascertaining at least two rational or reasonable considerations. . . ." *Id*. at 12. The Court found that California had "a legitimate interest in local neighborhood preservation, continuity, and stability" and in protecting the reliance interest of existing homeowners. *Id*. at 12-13. The Court noted that as "between newer and older owners, Article XIIIA does not discriminate with respect to either the tax rate or the annual rate of . . . assessments." *Id*. at 12. The only difference in treatment is the basis on

which the property is initially assessed. *Id.*

**{42}** In his concurrence in *Zhao*, Judge Sutin worried that "it is not all that clear that [*Nordlinger*] would control rather than *Allegheny*." *Zhao*, 2012-NMCA-056, ¶ 34 (Sutin, J., specially concurring). The case before us is more analogous to *Nordlinger*, thus it is dispositive on the issue of whether Section 7-36.21.2 satisfies rational basis.

**{43}** We agree with United States Supreme Court that *Allegheny* is sufficiently distinguishable from *Nordlinger*. In *Nordlinger*, the Court found that *Allegheny* did not control because Proposition 13 "was enacted precisely to achieve the benefits of an acquisition-value system," while the unequal assessment practice in *Allegheny* had no such purpose. *Id.* at 15. Therefore, by distinguishing and not overruling *Allegheny*, the Supreme Court chose to preserve, but severely narrow, the notion that "dramatic disparities in taxation of properties of comparable value" can violate equal protection. *Nordlinger*, 505 U.S. at 14.

**{44}** Further, the tax assessor in *Allegheny* unilaterally, that is absent an authorizing statute or constitutional amendment, assessed property within the county at 50 percent of its appraised value. *Allegheny*, 488 U.S. at 338. Therefore, there was no indication in *Allegheny* "that the policies underlying an acquisition-value taxation scheme could conceivably have been the purpose for the Webster County tax assessor's unequal assessment scheme." *Nordlinger*, 505 U.S. at 15.

**{45}** A classification of property for tax purposes will not be set aside by the courts, "if any state of facts reasonably may be conceived to justify it." *Anaconda*, 1979-NMCA-158, ¶ 23. Legislative classifications will be upheld if they are "practical and not palpably arbitrary." *Davy v. McNeill*, 1925-NMSC-040, ¶ 14, 31 N.M. 7, 240 P. 482; *see also Nordlinger*, 505 U.S. at 2, 18.

**{46}** We hold that Section 7-36.21.2 rationally furthers the state's interests in fostering neighborhood preservation and stability by "permitting older owners to pay progressively less in taxes than new owners." *Nordlinger*, 505 U.S. at 12. Also similar to *Nordlinger*, new and old homeowners "are treated differently with respect to one factor only—the basis on which their property is initially assessed." *Id.* That is precisely the situation before us. New homeowners are treated differently from old homeowners when their properties are assessed at their current and correct value in the year for which their property taxation is being determined. *See* Section 7-36-21.2(B). From that point forward, the newer homeowners enjoy the benefit of the 3 percent valuation limitation on residential property, just as newer homeowners in California "benefit[ted] in both the short and long run from the protections of a 1% tax rate ceiling and no more than a 2% increase in assessment value per year." *Nordlinger*, 505 U.S. at 12. We also conclude that Section 7-36.21.2 is "part of a systematic and definite plan which provides that all similar properties be valued in a like manner." *Ernest W. Hahn*, 1979-NMCA-158, ¶ 16.

**{47}** Zhao also argues that there is a significant difference between California's choice of

13

acquisition-value in its state constitution as opposed to New Mexico's choice by way of statute alone. We are not persuaded. The same equation and rationales apply. New Mexico's statutory choice of an acquisition-value system would satisfy equal protection no less than California's choice in its state constitution. Having satisfied equal protection, New Mexico's choice necessarily satisfies the equal and uniform clause of our state Constitution.

**C.      The Court of Appeals erred in holding that Homeowners were owner-occupants by interpreting "owner-occupant" to mean nothing more than "owner"**

**{48}**      Zhao argues that the Court of Appeals' opinion reveals that ownership alone was the basis for the holding that the classification of taxpayers found in Section 7-36-21.2 is based upon owner-occupancy. Zhao contends that the issue of owner-occupancy was not an issue considered by the Board, that neither party argued that the taxpayers were being classified based on owner-occupancy status, and Zhao was never questioned about his owner-occupancy status.

**{49}**      Zhao directs this Court's attention to the following excerpt from of the Court of Appeals opinion:

> We disagree that a new classification of taxpayer is created based on the time of acquisition. Section 7-36-21.2 applies the limitation to increases based upon when a taxpayer acquires ownership of the property and, hence, taxpayer status relative to that property. An owner of residential property is "the person in whom is vested any title to property[.]" NMSA 1978, § 7-35-2(G) (1994). "Property taxes imposed are the personal obligation of the person owning the property on the date on which the property was subject to valuation for property taxation purposes." NMSA 1978, § 7-38-47 (1973). All property subject to taxation is valued as of January 1 of each tax year, Section 7-38-7, at its "current and correct value[]," Section 7-36-16(A). The class of owner-occupants, contained in Article VIII, Section 1, does not include anyone until they own property. What this means is the classification is based on the acquisition of taxpayer status. The value limitation in question only commences once a taxpayer owns the property.

*Zhao*, 2012-NMCA-056, ¶13 (alterations in original). Zhao contends that the Court of Appeals erred in interpreting ownership that occurs with a change of ownership as giving rise to owner-occupant status. In so doing, Zhao asserts that Section 7-36-21.2 does not classify taxpayers based on owner-occupant status, but rather classifies taxpayers based on when the taxpayer becomes an owner of the property, without regard to occupancy. Zhao notes that the Court of Appeals' conclusion that Section7-36-21.2 is based on owner-occupant status begs the question regarding what is an owner-occupant and that this issue must be resolved before determining whether Homeowners qualify as such.

**{50}**      The State disagrees with the Court of Appeals' finding that the Section 7-36.21.2

14

allows individuals to fall within a class of taxpayers based on their acquisition of a certain taxpayer status, i.e., owning property. The State also disagrees with Zhao's assertion that there was insufficient evidence to allow the Court of Appeals to conclude that Homeowners were owner-occupants. The State asserts that based on the Homeowners' submissions to the district court, the Court of Appeals had grounds for concluding that Homeowners were owner-occupants. The State directs this Court's attention to Zhao's statements in which Zhao referred to the property as his home, and to Mr. Fallick's statement that after his divorce he moved to the property at issue which was around the corner from his former home.

**{51}** The State asserts that the Court of Appeals limited its review to whether Section 7-36-21.2 was constitutional as applied to owner-occupant taxpayers, and failed to address the broader question, that was certified by the district court, regarding the overall constitutionality of Section 7-36-21.2. While the Court of Appeals was free to reformulate the certified question, *see* Rule 12-607(C)(4) NMRA, the Court of Appeals erred in concluding that Section 7-36-21.2 is a classification or limitation based on owner-occupancy.

**{52}** Further, the Court of Appeals erred by concluding, without explanation, that the mere purchasing of a residential property renders an individual an owner-occupant. Although the Court of Appeals noted that "[t]he statute's application or non-application to owners of residential property who do not occupy their premises is a matter we leave to the Legislature to evaluate," the opinion still creates an impression that ownership may equate to owner-occupant. *Zhao*, 2012-NMCA-056, ¶ 20.

**{53}** We agree with Zhao that the language contained in the Court of Appeals' opinion creates the impression that ownership alone may equate to owner-occupancy and that the change of ownership provision of Section 7-36-21.2 operates as a condition on an individual's ability to benefit from limitations on valuations. We clarify that Section 7-36-21.2 does not violate the New Mexico Constitution as it limits revaluation for taxation purposes based upon the nature of property (time of acquisition) and not the taxpayer (owner-occupancy).

## IV.    CONCLUSION

**{54}** We hold that Section 7-36-21.2 does not violate the New Mexico Constitution and does not create an unauthorized class of residential property taxpayers based solely upon time of acquisition. We also hold that the Court of Appeals erred in its interpretation of "owner-occupant." Therefore, we affirm in part and reverse in part the Court of Appeals.

**{55}    IT IS SO ORDERED.**

_____

**PETRA JIMENEZ MAES, Justice**

15

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**